UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOANNE T. CRAIG, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   11-1200 (RC) |
| | : | |
| v. | : | Re Document No.:   28 |
| | : | |
| DISTRICT OF COLUMBIA *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS

**I.  INTRODUCTION**

The plaintiff claims that a co-worker subjected her to a series of sexually charged and inappropriate comments over the course of her employment with the District of Columbia's Metropolitan Police Department. After she complained to her superiors, she alleges, she was transferred to a different office. She now brings suit, alleging that her employer violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the District of Columbia Human Rights Act, D.C. CODE §§ 2-1401.01 *et seq.* ("DCHRA"). Now before the court is the defendants' motion to dismiss,[1] which the court will grant in part and deny in part for the reasons discussed below.

---

[1]  The defendants style their motion as a motion to dismiss or, in the alternative, a motion for summary judgment. Because no discovery has yet taken place in this case, the court will construe it as a motion to dismiss. *Hollabaugh v. Office of the Architect of the Capitol*, 2012 WL 759651, at *1 (D.D.C. Mar. 9, 2012) ("There having been no discovery in this case, it is premature to resolve this matter on summary judgment." (citing *Gordon v. Office of the Architect of the Capitol*, 750 F. Supp. 2d 82, 94 (D.D.C. 2010))); *see Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (recognizing that "summary judgment ordinarily is proper only after the plaintiff has been given adequate time for discovery" (internal quotations omitted)).

## II. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[2]

The plaintiff, Sgt. Joanne Craig, was hired as a police officer by the District of Columbia Metropolitan Police Department ("MPD") in October 1988, 2d Am. Compl. ¶ 9, and was assigned to the Seventh District in November 1995, *id.* ¶ 11. Sgt. Craig first made contact with Sgt. Eric Levenberry in 2006 when the latter was assigned to investigate an incident involving one of the plaintiff's officers. *Id.* ¶ 12. While conducting the investigation, Sgt. Levenberry was discourteous to the plaintiff, yet respectful of the plaintiff's subordinate male officer. *Id.* In October 2007, Sgt. Craig had a chance encounter with Sgt. Levenberry, where he made an apparently sexist remark relating to a female coworker. *Id.* ¶ 16.

Both Sergeants were assigned to work out of the same office in December 2007. *Id.* ¶ 18. Beginning in February 2008, Sgt. Levenberry acted rudely toward the plaintiff during group discussions. *Id.* ¶ 23. Soon thereafter, he began to repeatedly ask her questions of an increasingly personal nature. *Id.* ¶¶ 24–26, 29, 34. Sgt. Levenberry persisted with his inappropriate behavior through the summer of 2008, commenting on her physical appearance and attire, *id.* ¶¶ 40–41, and making inappropriate and unwanted physical contact, *id.* ¶¶ 35–36. He also made tasteless remarks about her sexual life, *id.* ¶¶ 43, 47, and gave her suggestive looks, *id.* ¶¶ 41, 48.

In the summer of 2008, Sgt. Craig complained to Lt. Peter Hunt, her superior, about Sgt. Levenberry's conduct. *Id.* ¶ 37. Her complaint fell on deaf ears. *Id.* Sgt. Craig next went to Commander Maupin, one of the named defendants, to protest Sgt. Levenberry's actions. *Id.* ¶ 52. Rather than taking measures against Sgt. Levenberry, Commander Maupin responded by preventing Sgt. Craig from receiving Police Segway Certification training in November 2008.

---

[2]   For the purposes of a motion to dismiss, the court assumes the plaintiff's factual allegations to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

*Id.* ¶ 53.  Moreover, he denied her requests to participate in a Crisis Intervention Training, as well as the MPD's Take Home Vehicle Program.  *Id.*

On February 26, 2009, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming gender discrimination and retaliation.  *Id.* ¶ 7.  On February 21, 2010, Commander Maupin transferred Sgt. Craig away from the Seventh District, her home of fifteen years, to a temporary detail with the Fourth District, thus moving her farther away from her residence and positioning her with a less desirable assignment.  *Id.*  This transfer was made permanent on April 24, 2011.  *Id.* ¶ 57.  The plaintiff filed another EEOC charge on February 10, 2012, alleging that the April 2011 transfer was an act of retaliation.  2d Am. Compl. ¶ 7.  The EEOC issued the plaintiff notice of her right to sue on February 28, 2012.  *Id.*

The plaintiff's second amended complaint sets forth four counts: Sex Discrimination under Title VII (Count I); Retaliation under Title VII (Count II); Sex Discrimination under the DCHRA (Count III); and Retaliation under the DCHRA (Count IV).  The defendants move to dismiss all four claims.

### III.  ANALYSIS

#### A.  Legal Standard for a Motion to Dismiss Under Rule 12(b)(6)

All that the Federal Rules of Civil Procedure require of a complaint is that it contain a "short and plain statement of the claim" in order to give the defendants fair notice of what the claim is and the grounds upon which it rests.  FED. R. CIV. P. 8(a)(2), *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court considering such a motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It

3

is not necessary for the plaintiff to plead all elements of his *prima facie* case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Id*. A court need not accept a plaintiff's legal conclusions as true, *id.*, nor must the court presume the veracity of legal conclusions that are couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## B. The Defendants Have Not Shown that the Plaintiff Failed to Timely Exhaust Administrative Remedies for Her Title VII Claims

### 1. Discrimination

The defendants argue that the plaintiff's Title VII gender discrimination claim must be dismissed because the plaintiff failed to exhaust her administrative remedies in a timely manner. Defs.' Mot. at 4. Specifically, the defendants maintain that the plaintiff's EEOC charge was untimely because it was not filed within 180 days of the allegedly unlawful incident. *Id.* at 5. The plaintiff counters that Title VII plaintiffs have 300 days to file a charge with the EEOC. Pl.'s Opp'n at 4. The plaintiff has the better side of the argument.[3]

---

[3] At the outset, the court notes that the failure to exhaust administrative remedies is an affirmative defense that the plaintiff is not required to anticipate in her complaint. *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1059 n.3 (D.C. Cir. 1988). Instead, the defendants bear the burden of pleading and proving this defense. *Rosier v. Holder*, 833 F. Supp. 2d 1, 15 (D.D.C. 2011). But the court will nevertheless proceed in order to clarify the relevant legal analysis.

The EEOC has broad authority to enforce Title VII's mandates, and the EEOC has established detailed procedures for the administrative resolution of discrimination complaints. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). "Complainants must timely exhaust these administrative remedies before bringing their claims to court." *Id.* In particular, Title VII ordinarily requires that plaintiffs file an EEOC charge within 180 days of the allegedly unlawful act. 42 U.S.C. § 2000e-5(e)(1). But this deadline is extended to 300 days if the plaintiff also initiated proceedings with a state or local agency. *Id.* In the District of Columbia, the EEOC and the local agency tasked with investigating discrimination claims operate on a "worksharing agreement" whereby a claim filed with one agency is simultaneously cross-filed with the other. *Lee v. District of Columbia*, 733 F. Supp. 2d 156, 161 (D.D.C. 2010). As a result, plaintiffs in the District of Columbia who file a complaint with the EEOC are deemed to have instituted proceedings with a state or local agency and are thus afforded 300 days to file their complaints under 42 U.S.C. § 2000e–5(e)(1). *Carter v. George Washington Univ.*, 387 F.3d 872, 879 (D.C. Cir. 2004); *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 568–69 (D.C. 2007).

Here, the plaintiff alleges that she was subjected to repeated acts of sexual harassment between 2006 and 2008. She alleges that she filed a charge with the EEOC alleging gender discrimination and retaliation on February 26, 2009. 2d Am. Compl. ¶ 7. It thus appears that her February 26, 2009 EEOC charge would be timely for any discrete discriminatory acts that occurred May 2, 2008 or later. Due to the lack of factual development in this case and the parties' limited briefing on the issue, it remains unclear which acts occurred on or after this date. This reason alone would be grounds to deny the defendants' motion. *Bowe-Connor v. Shinseki*, 2012 WL 601025, at *7 (D.D.C. Feb. 24, 2012) (noting that unresolved factual issues precluded

the court from determining whether the plaintiff had exhausted her administrative remedies); *Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 137–38 (D.D.C. 2009) (denying the defendant's motion to dismiss claims based on the failure to administratively exhaust "[g]iven the number of potentially pertinent factual issues that remain unresolved").

But the defendants' argument suffers from a deeper flaw. The defendants assume that the plaintiff's claim is based on a number of separate, discrete acts of discrimination. They ignore the possibility that the plaintiff could prevail under a "hostile work environment" claim, which would require the court to apply a different timeliness analysis entirely. To prevail on a hostile work environment claim, the plaintiff must show that her "workplace is permeated with discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Morris v. Jackson*, 2012 WL 362042, at *6 (D.D.C. Feb. 6, 2012). A hostile work environment is usually characterized by a series of events that cumulatively give rise to a claim, although each individual component might not be actionable on its own. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).[4]

Because a hostile work environment claim aggregates numerous occurrences, these claims are subject to a different timeliness analysis than claims involving discrete acts. *See id.* at 118. Thus, plaintiffs need only allege that one or more contributing acts occurred within the relevant time period. *Id.* at 115. It does not matter that some component acts may fall outside

---

[4] Although the plaintiff does not invoke the phrase "hostile work environment" in her complaint, the factual allegations contained therein would plausibly support such a claim. *See Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 191–92 (D.D.C. 2008) (inferring a plausible hostile work environment claim from the factual allegations even when the plaintiff did not list "hostile work environment" as a claim for relief).

6

that period. *Id*. at 117. Of course, this doctrine should not be interpreted as an "open sesame to recovery for time-barred violations." *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011). Instead, the plaintiff must show that the time-barred incidents are "adequately linked into a coherent hostile environment claim." *Id.* A plaintiff can do so by establishing that they "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan*, 536 U.S. at 120–21. To the extent that the plaintiff may pursue her Title VII discrimination claim by showing she was subjected to a hostile work environment, the defendants have put forth no arguments to suggest that she failed to exhaust administrative remedies in a timely manner. Accordingly, the plaintiff's discrimination claim cannot be dismissed at this stage.

### 2. Retaliation

The defendants similarly argue that the plaintiff's Title VII retaliation claim must be dismissed because she failed to exhaust her administrative remedies in a timely manner. Defs.' Mot. at 8. The court disagrees. The plaintiff was first detailed to the Fourth District on February 21, 2010. 2d. Am. Compl. ¶ 55. Her transfer was made permanent the following year—April 24, 2011. *Id.* ¶ 57. She filed an EEOC charge on February 10, 2012, *Id.* ¶ 7, less than 300 days after the permanent transfer, but more than 300 days after her initial detail.[5] To the extent that the plaintiff bases her claim on a number of distinct retaliatory acts, it is possible that any claims relating to her initial detail to the Fourth District (which occurred in February 2010) were not exhausted in a timely fashion.

But again, the plaintiff could argue that she was subjected to a hostile work environment as a form of retaliation for her EEOC activity. *See Baird v. Gotbaum*, 662 F.3d 1246, 1250

---

[5] The plaintiff had until February 18, 2012 to file an EEOC charge following the April 2011 transfer.

7

(D.C. Cir. 2011); *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) ("In this circuit, a hostile work environment can amount to retaliation under Title VII."). Construing the complaint generously, as the court must, the court deems it plausible that the plaintiff was subjected to a hostile work environment as a form of reprisal. *See* 2d Am. Compl. ¶ 53 (alleging several retaliatory acts following her complaint of sexual harassment). And if the initial detail to the Fourth District is "adequately linked" to other acts constituting a hostile work environment, it would not be time-barred. *Baird*, 662 F.3d at 1251. Thus, it is too early to dismiss the plaintiff's Title VII retaliation claim on exhaustion grounds.

### C. The Plaintiff's Filing of an EEOC Charge Tolled D.C.'s One-Year Statute of Limitations for DCHRA Claims

The defendants next argue that the plaintiff's DCHRA claims are barred by D.C.'s one-year statute of limitations. Defs.' Mot. at 12. Once more, the court disagrees. Section 2-1403.16 of the D.C. Code provides that any DCHRA claim must be filed within one year of the allegedly unlawful occurrence or the discovery thereof. *Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 77 (D.D.C. 2009). Under § 2-1403.16(a), "[t]he timely filing of a complaint with the [D.C. Office of Human Rights] . . . shall toll the running of the statute of limitations while the complaint is pending." When a charge of discrimination is filed with the EEOC in the District of Columbia, a claim is automatically cross-filed with the D.C. Office of Human Rights, 29 C.F.R. § 1601.13(a)(4)(ii)(A); *see Carter v. George Washington Univ.*, 387 F.3d 872, 879 (D.C. Cir. 2004), which suffices to toll the one-year statute of limitations for DCHRA claims. *See Tucker*, 764 F. Supp. 2d 1, 6 (D.D.C. 2011); *Ibrahim v. Unisys Corp.*, 582 F. Supp. 2d 41, 45 (D.D.C. 2008) (citing *Esteños v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008)).

Here, the plaintiff first filed an administrative charge with the EEOC on February 26, 2009. Thus, the plaintiff may pursue any DCHRA claims that accrued on or after February 26,

2008.  Yet it is again too early to tell which acts accrued on or after this date, for doing so would require a factual inquiry that is best undertaken at a later stage of the litigation.  *See Hamilton v. District of Columbia*, 2012 WL 1130855, at *4 (D.D.C. Apr. 5, 2012) ("Because assessments of the statute of limitations often depend on contested questions of fact a court should hesitate to dismiss a complaint on statute of limitations grounds." (citing *Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 130 (D.D.C. 2009))).  And this is particularly so where the plaintiff may pursue her claim by demonstrating that she was subjected to a hostile work environment.  Accordingly, the court will not dismiss the plaintiff's DCHRA claims at this juncture.

### D.  The Factual Allegations in the Second Amended Complaint Support a Plausible Retaliation Claim

#### 1.  The Plaintiff Plausibly Alleges that She Suffered an "Adverse Employment Action"

The defendants argue that the plaintiff's retaliation claims should be dismissed because she does not allege that she suffered an "adverse employment action."  Defs.' Mot. at 5–6.  The plaintiff counters that the factual allegations in the complaint suffice to state a plausible claim for relief.  Pl.'s Opp'n at 7–8.

To prove unlawful retaliation under Title VII or the DCHRA,[6] a plaintiff must establish that she suffered a "materially adverse action" because she brought or threatened to bring a discrimination claim.  *See* 42 U.S.C. § 2000e-3(a); *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). A retaliatory act is "materially adverse" if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 607 (D.C. Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v.*

---

[6]     Courts adjudicating DCHRA claims generally use the same legal framework created to resolve Title VII claims.  *See, e.g.*, *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 286 (D.D.C. 2011); *Booth v. District of Columbia*, 701 F. Supp. 2d 73, 82 (D.D.C. 2010).

*White*, 548 U.S. 53, 68 (2006)).  Whether a particular reassignment of duties constitutes an adverse employment action "is generally a jury question." *Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir. 2007) (citing *Burlington*, 548 U.S. at 71).

The plaintiff alleges that she was transferred from the Seventh District, where she had worked for approximately 15 years.  2d Am. Compl. ¶ 56.  She alleges that the Fourth District was a less desirable assignment and that it was farther from her home.  *Id.*  Whether or not the defendants' acts will ultimately give rise to liability is a fact-sensitive question that should be reserved for a later stage of the litigation.  *See Munro v. LaHood*, 839 F. Supp. 2d 354, 363 (D.D.C. 2012) (noting that the plaintiff's allegations were speculative, yet concluding: "Despite these doubts as to whether plaintiff will ultimately be able to prove that he suffered an adverse employment action, the Court finds that plaintiff's allegations are sufficient to survive a motion to dismiss." (citing *Ali v. District of Columbia*, 697 F. Supp. 2d 88, 91 (D.D.C. 2010))); *Sanders v. Veneman*, 131 F. Supp. 2d 225, 229–30 (D.D.C. 2001) (noting that the test to determine whether or not a transfer was adverse "requires a case-by-case analysis" and thus denying the defendant's motion to dismiss).  Although the defendants argue that the plaintiff's geographical transfer from the Seventh District to the Fourth District was a "purely lateral transfer" that was not "materially adverse" under Title VII, the court concludes that the plaintiff's allegations are enough to satisfy the low burden imposed by Rule 8(a)(2).

However, the defendants' arguments are only relevant to the extent that the plaintiff bases her claim on a discrete number of individual retaliatory acts.  If she were to claim that the defendants retaliated against her by creating a hostile work environment, her claims would be analyzed under a different legal standard.  *See Hussain v. Nicholson*, 435 F.3d at 366 (concluding that a plaintiff must show that the employer's acts were of such "severity or

pervasiveness" as to "alter the conditions of her employment" in order to constitute unlawful retaliation (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993))) (alterations omitted). Accordingly, the plaintiff's retaliation claims cannot be dismissed at this early stage of the litigation.

### 2. The Plaintiff Plausibly Alleges that Her Protected Activity "Caused" Her Transfer

The defendants also argue that the plaintiff's transfer from the Seventh District to the Fourth District did not closely follow her complaint to her superiors regarding Sgt. Levenberry's discriminatory acts. Defs.' Mot. at 9. The defendants thus conclude that the plaintiff has not established that her protected activity caused the retaliatory acts. *Id.*

In order to establish a *prima facie* case of retaliation, a plaintiff must show: "(1) that [s]he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." *Solomon v. Vilsack*, 2012 WL 629399, at *11 (D.D.C. Feb. 23, 2012) (quoting *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003)). The defendants cite *Garret v. Lujan*, 799 F. Supp. 198, 202 (D.D.C. 1992) for the proposition that no inference of causation may be drawn from the lack of temporal proximity between the plaintiff's EEOC charge and the defendants' alleged retaliation. But there are several flaws in this argument. First, temporal proximity is one way of proving causation, but it is not the only way. *Casole v. Johanns*, 577 F. Supp. 2d 138, 141 (D.D.C. 2008). Where plaintiffs rely solely on temporal proximity to prove causation, courts have held that the passage of time weakens or destroys the causal inference. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) ("For purposes of establishing a prima facie case of retaliation, temporal proximity can indeed support an inference of causation, but only where the two events are very close in time.") (citation and internal quotation marks omitted). But the plaintiff may rely on other evidence to prove causation, including statements made by her superiors. *See, e.g.*,

11

Pl.'s Opp'n, Ex. 1 ¶ 2 (asserting that Commander Maupin himself admitted that he transferred the plaintiff to the Fourth District because of her sexual harassment claim against Sgt. Levenberry). Thus, even if the court were to accept the defendants' argument regarding the timing of her transfer, the plaintiff may always prove her claim using other evidence. *Sharma v. District of Columbia*, 791 F. Supp. 2d 207, 219–20 (D.D.C. 2011) (collecting cases); *Casole v. Johans*, 577 F. Supp. 2d 138, 140–41 (D.D.C. 2008).

Second, the court reiterates that the plaintiff may pursue her retaliation claim by arguing that she was subjected to a hostile work environment. Therefore, she could argue that her transfer to the Fourth District was adequately linked to other retaliatory acts that occurred shortly after she complained to her superiors. *Baird*, 662 F.3d at 1251; *see* 2d Am. Compl. ¶ 53 (alleging that the plaintiff was subjected to a number of retaliatory acts in November 2008, only one month after complaining of sexual harassment). Accordingly, the court concludes that the plaintiff's factual allegations are sufficient to survive the defendants' motion and her retaliation claims may proceed to discovery.

### E. The Plaintiff's Failure to Give Notice of Suit Under D.C. Code § 12-309 Prevents Her from Seeking Certain Types of Relief Against the District on her DCHRA Claims

The defendants argue that the plaintiff's DCHRA claim is barred by D.C. Code § 12-309, which provides that no individual may sue the District of Columbia unless that individual has first given written notice of the injury within six months of its occurrence.[7] Defs.' Mot. at 11. The plaintiff concedes that her failure to comply with D.C. Code § 12-309 prevents her from seeking unliquidated damages against the District of Columbia on her DCHRA claim. Pl.'s Opp'n at 8–9. The plaintiff nevertheless maintains that she may still pursue "liquidated"

---

[7] This notice requirement only pertains to the plaintiff's DCHRA claims and poses no bar to her Title VII claims, which arise under federal law. *See Brown v. United States*, 742 F.2d 1498, 1500 (D.C. Cir. 1984).

damages and other equitable relief against the District.[8] *See Caudle v. District of Columbia*, 2008 WL 3523153, at *2 (D.D.C. Aug. 13, 2008) (concluding that a plaintiff's failure to comply with § 12-309 does not affect her ability to recover liquidated damages or equitable relief) (citing *Byrd v. District of Columbia*, 538 F. Supp. 2d 170, 176 (D.D.C. 2008)). The court agrees: DCHRA plaintiffs must comply with § 12-309's notice of suit requirement. *Owens v. District of Columbia*, 993 A.2d 1085, 1088–89 (D.C. 2010). Accordingly, the plaintiff may only seek equitable relief and liquidated damages against the District for her DCHRA claims.

### F. The Court Will Dismiss *Sua Sponte* the Plaintiff's Title VII Claims Against Commander Maupin

Individuals may not be held liable under Title VII. *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). Rather, an individual employee may be sued in his capacity as the agent of an employer. *Id.* Therefore, the court will dismiss *sua sponte* the plaintiff's Title VII claims against Commander Maupin, the only individual that is currently named as a defendant in this suit.[9] *See Hoskins v. Howard Univ.*, 839 F. Supp. 2d 268, 276 (D.D.C. 2012) (dismissing the plaintiff's Title VII claims against a supervisory employee because the claims against the individual "essentially merge" with the claim against the employer). Yet the plaintiff's DCHRA

---

[8] The defendants state for the first time in their reply that the facts alleged in the complaint do not support an award of liquidated damages. Defs.' Reply at 4. Because the defendants did not raise this argument until the filing of their reply brief, the court will deem the argument waived. *Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008); *see Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) ("We need not consider this argument because plaintiffs . . . raised it for the first time in their reply brief."); *McBride v. Merrell Dow & Pharm., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered."). However, because the plaintiff's claim involves a lateral transfer with no apparent impact on pay, a viable claim for liquidated damages is dubious. Regardless, a claim for injunctive relief to obtain a transfer back to the Seventh District would remain.

[9] Sgt. Levenberry was named as a defendant in the plaintiff's original complaint, but not in her second amended complaint. Because the latter controls, Sgt. Levenberry is no longer a party to this action.

claim against Commander Maupin may proceed, for the DCHRA allows for individual liability under certain circumstances.  *Purcell v. Thomas*, 928 A.2d 699, 715 (D.C. 2007) (concluding that the "text and purpose of the DCHRA" and case precedent do not "preclude a claim against individual management and supervisory employees involved in committing the allegedly discriminatory conduct"); *see Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 284–85 (D.D.C. 2008) (concluding that plaintiff's former supervisor could be held individually liable under the DCHRA).

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants' motion.  An order consistent with this memorandum opinion is separately issued this 2nd day of August, 2012.

RUDOLPH CONTRERAS  
United States District Judge