# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JOANNE T. CRAIG, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 11-1200 (RC) |
| | : | | |
| v. | : | Re Document No.: | 70 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Joanne Craig alleges that she was sexually harassed by a co-worker at the Metropolitan Police Department ("MPD"), and that when she reported the harassment to her supervisor, her supervisor retaliated by denying her training and transferring her to another district. She brings this employment discrimination action against her employer, the District of Columbia (the "District"), and her former supervisor, Joel Maupin (collectively, the "Defendants"), alleging claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the District of Columbia Human Rights Act, D.C. Code §§ 2-1401-01 *et seq.* ("DCHRA"). Now pending before the Court is the Defendants' motion for summary judgment. The Defendants argue first that the Plaintiff's claims are barred because they are unexhausted and untimely, and second, that the Plaintiff has failed to establish a prima facie case of discrimination or retaliation. Upon consideration of the Defendants' motion, the memoranda in support thereof and opposition thereto, and the evidentiary record submitted by both parties to supplement their filings, the Court will grant in

part and deny in part the Defendants' motion for summary judgment.

## II.  FACTUAL BACKGROUND[1]

Plaintiff Joanne Craig is a female who began working for MPD as a police officer in 1988.  2d Am. Compl. ¶¶ 8–9, ECF No. 26.[2]  In November 1995, she was promoted to the position of sergeant and assigned to MPD's Seventh District.  *Id.* ¶ 11.  Eric Levenberry is a male who joined MPD as an officer in 1992 and became a sergeant in 2001.  *See* Levenberry Dep. 21:8–22:4, 44:1–45:4, Sept. 16, 2013, ECF No. 76-3.  Sgt. Craig first encountered Sgt. Eric Levenberry in 2006 when the latter was assigned to investigate an incident involving one of Sgt. Craig's officers.  *See* 2d Am. Compl. ¶ 13.  Sgt. Craig recalled that Sgt. Levenberry cut her off when she was answering one of his questions, but that he was respectful to her subordinate male officer.  *Id.*; Craig Dep. 95:18–97:2, May 14, 2013, ECF Nos. 70-2, 76-2.

In early 2007, Sgt. Levenberry was detailed to the Seventh District.  2d Am. Compl. ¶ 14.  Sgts. Craig and Levenberry worked in different offices and had little or no contact during Sgt. Levenberry's first several months at the Seventh District.  *See id.* ¶ 14.  During a chance parking

---

[1] When a court is analyzing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Accordingly, although many of the facts in this case are disputed, the Court will accept the facts alleged by Sgt. Craig as true and will view the evidence in the light most favorable to her.

[2] In Sgt. Craig's opposition to the Defendants' motion for summary judgment, she points out that defense counsel asked Sgt. Craig at her deposition if all of the facts alleged in her second amended complaint were true and correct.  *See* Pl.'s Opp'n at 3 n.1 (citing Craig Dep., 11:1–12:15, May 14, 2013).  Sgt. Craig testified that they were.  As a result, she contends that the second amended complaint became a verified complaint.  Defendants have not disputed the point, and in light of Sgt. Craig's testimony under oath that all of the factual allegations in her second amended complaint are true and accurate, the Court will treat the second amended complaint as a verified complaint and the functional equivalent of an affidavit.  *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992) ("Verification is defined as '[c]onfirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition.'" (quoting *Black's Law Dictionary* 1400 (5th ed. 1979))).

lot encounter in October 2007, however, Sgt. Levenberry told Sgt. Craig that a female officer at the Seventh District had made a complaint against him alleging that he had harassed her.  Craig Dep. 26:6–27:2; 2d Am. Compl. ¶ 16.  While discussing the complaining officer's allegation, Sgt. Levenberry stated that the female officer was not his type and that "nobody wants her big stinky butt anyway."  2d Am. Compl. ¶ 16.  Sgt. Craig was taken aback by the comment and promptly ended the conversation.  *Id.*

In December 2007, Sgts. Craig and Levenberry began working the same shift out of the Seventh District's sergeant's office.  *See id.* ¶ 17.  And although Sgt. Craig would have preferred to avoid Sgt. Levenberry, [3] for the first several weeks that they worked together, she and Sgt. Levenberry had a cordial relationship.  *Id.* ¶ 22.  Beginning in February 2008, however, that relationship began to deteriorate.  *Id.* ¶ 23.

## A.  Allegations regarding Sgt. Levenberry

According to Sgt. Craig, her trouble with Sgt. Levenberry began around February 2008, when he started to cut her off when she was speaking.  *See* Craig Dep. 100:3–11.  He frequently disagreed with or contradicted Sgt. Craig, and she believed that he did so to undermine her.  *Id.* at 100:12–17.  Sgt. Craig responded to this behavior by walking away from Sgt. Levenberry

---

[3] As the basis for her desire to avoid Sgt. Levenberry, Sgt. Craig cites – in addition to the October 2007 encounter in a parking lot – stories and rumors that she had heard through the department "grapevine" about Sgt. Levenberry's alleged history of harassing women.  *See* Craig Dep. 97:21–98:15, 99:2–10; 2d Amend Compl. ¶ 21.  She also claims to have had conversations with female officers regarding other complaints about Sgt. Levenberry.  *See, e.g.*, Craig Dep. 97:21–98:15.  However, Sgt. Craig does not assert that she personally witnessed Sgt. Levenberry harassing other women or being disciplined for having done so, and she has failed to offer supporting documentation, affidavits, or deposition testimony from those with personal knowledge of the alleged harassment.  Although the Court is compelled to accept as true all of Sgt. Craig's factual allegations that are based on personal knowledge, the Court cannot credit sheer hearsay regarding Sgt. Levenberry's alleged harassment of other women.  *See Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) ("[Plaintiff's] evidence about the conversation is sheer hearsay; she would not be permitted to testify about the conversation at trial.  It therefore counts for nothing." (citation omitted)).

when he attempted to initiate a conversation, and by refusing to address him when speaking to others.  *Id.* at 100:18–101:1.  Despite her attempts to avoid speaking with him, however, Sgt. Levenberry continued to approach Sgt. Craig.  In March 2008, he began asking Sgt. Craig questions about her personal life.  *Id.* at 100:12–103:13.  When Sgt. Levenberry asked Sgt. Craig if she was married, she suspected that he might be considering asking her out and told him that she was not married but was seeing someone.  *Id.* at 102:7–11.  Her suspicions were later proven correct when despite her statement that she was seeing someone, Sgt. Levenberry asked Sgt. Craig if she wanted to go out with him.  *Id.* at 103:4–13.  Frustrated with his refusal to listen, she ended the conversation by declining forcefully and telling him that he needed to "go home and fuck [his] wife."  *Id.* at 103:4–13.

That same month, Sgt. Craig became the subject of an unrelated and confidential internal affairs investigation regarding her off-duty conduct.  Although the investigation should have been confidential, Sgt. Craig believed that Sgt. Levenberry somehow obtained information about it because he told Sgt. Craig that he knew about the investigation, that she could discuss it with him, and that he had important information for her.  2d Am. Compl. ¶¶ 30–34.  Sgt. Levenberry also loudly announced to the office that Sgt. Craig had been "down at IAD" upon her return from an interview there, which Sgt. Craig found embarrassing.  *Id.* ¶ 33.  On another occasion, Sgt. Levenberry sat down next to Sgt. Craig's desk and pulled her between his legs, telling her that he was there for her if she wanted to talk.  *Id.* ¶ 44.  When Sgt. Craig tried to move away and to pull Sgt. Levenberry's hands off of her chair, he refused to release her and told her to be quiet, only letting her pull away from him after she got even louder.  *Id.*

During the spring and summer of 2008, Sgt. Levenberry repeatedly complimented Sgt. Craig's physical appearance, commented on the impropriety of her attire, and stared at her in a

lecherous way.  *Id.* ¶¶ 35, 40, 41.  He also rubbed her hair without permission.  *Id.*  At one point

in March 2008, Sgt. Levenberry told Sgt. Craig "this is where babies come from," while sitting

with his legs open and rubbing his groin.  *Id.* at 104:5–17; 2d Am. Compl. ¶ 27.  Sgt. Craig also

recalls an encounter in the summer of 2008 when Sgt. Levenberry interrupted her conversation

with another sergeant, saying "oh you think you're bad, huh."  *Id.* ¶ 36.  When Sgt. Craig replied

that she did not think so but that she would express her opinion, Sgt. Levenberry proceeded to

chase her around the room until another sergeant blocked her path, at which point Sgt.

Levenberry picked her up, threw her over his shoulders, placed his hands on her buttocks, and

said "see, you ain't bad."  *Id.*  Sgt. Levenberry ignored Sgt. Craig's repeated requests to be let

down until she began to kick and scream.  *Id.*  Shortly after that incident, Sergeant Craig

complained about Sgt. Levenberry's conduct to her superior, Lieutenant Peter Hunt.[4]  *Id.* ¶ 37.

Lieutenant Hunt told her that they needed to learn how to get along and to "stop being silly."  *Id.*

Sgt. Craig decided to go about her work and hoped that Sgt. Levenberry would leave her alone.

Craig Dep. 108:4-15.

     At some point after Sgt. Craig complained to Lieutenant Hunt, she came in to do roll call

and sat down at the table two chairs away from Sgt. Levenberry.  *Id.* at 110:1–112:4.  Sgt.

Levenberry then got up and moved to the area where officers were sitting, which Sgt. Craig felt

was disrespectful.  *Id.*  She also felt undermined by Sgt. Levenberry when he cut her off or

contradicted the instructions she gave to officers during roll call, and she observed that he did not

---

[4] The precise date that Sgt. Craig spoke with Lieutenant Hunt is not clear.  Her verified
complaint states that she complained to Lt. Hunt in the summer 2008, 2d Am. Compl. ¶ 37, but
at her deposition, she described the conversation as having occurred in March 2008, Craig Dep.
107:12–108:1.  Neither her complaint nor her deposition claim that she spoke with Lieutenant
Hunt twice, but in her Answers to the District of Columbia's First Set of Interrogatories, she
asserts that she reported Sgt. Levenberry's harassment to Lt. Hunt first in early spring of 2008
and then again in the Summer of 2008.  Pl.'s Resp. to Defs.' Interrog. No. 11.

treat their male co-workers in a similar fashion.  *Id.* at 112:6–18, 114:13–18.  Further, she alleges that as a result of her efforts to avoid Sgt. Levenberry and the sergeant's office, Sgt. Levenberry frequently misinformed the supervising lieutenants regarding Sgt. Craig's whereabouts and work hours, subjecting her to increased scrutiny.  2d Am. Compl. ¶ 46.  She also contends that her efforts to avoid Sgt. Levenberry's harassment negatively affected her work, *id.* ¶ 45, and took a serious toll on her mental and physical well-being, *id.* ¶ 58.

In addition, Sgt. Craig asserts that Sgt. Levenberry reported her partnership with another sergeant in an effort to isolate her, *id.* ¶ 39, made an inappropriate comment about not knowing why Sgt. Craig was mad because he did not sleep with her, *id.* ¶ 43, and told her that he knew who she was "messing with" and that she ought to "fuck up, not down," *id.* ¶ 47.  Then, on September 23, 2008, Sgt. Craig's partner asked her to fill in for him in handling check off.  *Id.* ¶ 51.  Sgt. Levenberry was the roll call official that day, and when Sgt. Craig told him that she would be substituting for her partner, Sgt. Levenberry was rude and ignored her.  *Id.*  Sgt. Craig responded by asking if Sgt. Levenberry was "going to continue to be a Butt Hole," which prompted Sgt. Levenberry to jump out of his chair yelling, forcing her back as he pressed up against her, pointed a finger in her face and called her "a fucking bitch."  Craig Dep. 15:12–19, 89:2–21.  Sgt. Craig feared for her safety during the altercation, and she filed a PD-119 complaint form with Lieutenant Patricia Janifer in response to the incident.  *See id.* at 15:10–19.

Lieutenant Janifer held a meeting with Sgts. Craig and Levenberry about the conflict between the two in September.  Although Sgt. Craig alleges that she told Lt. Janifer that Sgt. Levenberry was sexually harassing her, *see* Pl.'s Answer to Defs.' Interrog. No. 11, ECF No. 80, she contends that the meeting did not address any allegations of sexual harassment.  *See* Pl.'s Opp'n to Defs.' Mot. for Summ. J., 20, June 9, 2014, ECF No. 76.  Then, in early October 2008,

Commander Maupin requested a meeting with Sgt. Craig to discuss the September 23 incident. *See* Pl.'s Stmt. of Facts ¶ 17, ECF No. 76-1; Pl.'s Opp'n at ¶ 39.  According to Sgt. Craig, in addition to telling Commander Maupin about the September 23 altercation that was the subject of her complaint, she also told him that Sgt. Levenberry had been harassing her and asking her out on dates.  Craig Dep. 21:1–20.  She recounted the conversation where Sgt. Levenberry asked her out, *id.* 21:18–22, and she told Commander Maupin about the time that Sgt. Levenberry picked her up and placed his hands on her buttocks, *id.* 22:9–23:17.  Commander Maupin asked Sgt. Craig what she wanted him to do, and she said that she no longer wanted to be around Sgt. Levenberry.  *Id.*  Commander Maupin responded by telling Sgt. Craig to stay away from Sgt. Levenberry.  *Id.* 23:18–20; *see also* 2d Am. Compl. ¶ 53.  Sgt. Craig did not speak with Sgt. Levenberry again after meeting with Commander Maupin, Craig Dep. 176:03–09, but she does contend that Sgt. Levenberry continued to harass her up until she left the Seventh District by reporting her as absent to their superiors, and by speaking badly about her to her co-workers.[5] *See* Pl.'s Opp'n at 29; Levenberry Dep. 91:6–97:2.

## B. Allegations regarding Commander Maupin

After the October 2008 meeting, Sgt. Craig contends that Commander Maupin not only failed to take action on her sexual harassment allegations, but also denied her Police Segway Certification training on November 24-26, 2008, Crisis Intervention Training in April 2009, and

---

[5] Sgt. Craig asserts that Sgt. Levenberry spoke disparagingly about Sgt. Craig to her co-workers after the September 23 incident, referring to her as the "enemy."  However, she admitted that she did not hear him make the comments directly and learned about them only because she was told by others about what Sgt. Levenberry had said to them.  *See* Craig Dep. 27:14–29:21. The Court cannot credit such statements at the summary judgment stage.  *See Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("Because Greer's evidence about Carter's statement is 'sheer hearsay,' it 'counts for nothing' on summary judgment." (quoting *Gleklen*, 199 F.3d at 1369)); *Riggsbee v. Diversity Servs., Inc.*, 637 F. Supp. 2d 39, 46 (D.D.C. 2009) ("[O]n summary judgment, statements that are impermissible hearsay or that are not based on personal knowledge are precluded from consideration by the Court.").

participation in the take home vehicle program on an unspecified date, all in retaliation for her complaint regarding Sgt. Levenberry's sexual harassment. 2d Am. Compl. ¶ 53.

Then, on February 21, 2010, Commander Maupin detailed Sgt. Craig out of the Seventh District, her place of work for fifteen years, to the Fourth District, which was farther from her home. *Id.* ¶ 55. The detail became a formal transfer on April 24, 2011. *Id.* ¶ 56. When Sgt. Craig met with Commander Maupin in May 2011 regarding the grievance she filed over her transfer, she asked him why she was detailed out and transferred, and Commander Maupin replied that it was because she "had made an EEO[C] complaint." Craig Dep. 57:1–9.

### C. Procedural History

On February 26, 2009, Sgt. Craig filled out an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire alleging that Sgt. Levenberry was sexually harassing her and retaliating against her. *See* EEOC Intake Questionnaire, Feb. 26, 2009, ECF No. 76-6. At the end of the Intake Questionnaire was a section that asks the complainant to check a box indicating what she would like the EEOC to do with the information provided, and it instructs a complainant who wishes to file a charge and initiate an EEOC investigation to check the first box. *See id.* at 4. Alternatively, the form provides a second box to check for those who wish to speak with an EEOC employee before deciding whether to file a charge. Sgt. Craig did not check either box. *Id.*

Sgt. Craig filed her first EEOC charge on May 19, 2009,[6] alleging that beginning in April

---

[6] Sgt. Craig confuses her completion of the Intake Questionnaire with the filing of a charge of discrimination with the EEOC. The two are not the same. *See Park v. Howard Univ.*, 71 F.3d 904, 908–09 (discussing the distinction between a valid charge under Title VII and an unsworn pre-complaint questionnaire to which an employer did not have access); *Duberry v. Inter-Con Sec. Sys.*, 898 F. Supp. 2d 294, 298–99 (D.D.C. 2012) (holding that "submission of the Intake Questionnaire is neither a substitute for the charge, nor tolls the deadline"). Although Sgt. Craig argues that the Intake Questionnaire can be deemed a charge "if the document reasonably

2008, Sgt. Levenberry had sexually harassed her, discriminated against her because of her sex, and retaliated against her by calling in sick so that she had to work extra hours. *See* Defs.' Mot. Summ. J. at Ex. 2. She amended the charge on June 16, 2009,[7] removing language that had incorrectly referred to Sgt. Levenberry as her supervisor and deleting an erroneous statement that she had complained about Sgt. Levenberry to the Internal Affairs Department.[8] Defs.' Mot. Summ. J. at Ex. 3. The amended charge clarified that Sgt. Levenberry retaliated against Sgt. Craig because she refused his advances, and it states that he did so by, among other things, speaking disparagingly about her to others in the office. Sgt. Craig received a right to sue letter from the EEOC on March 31, 2012. 2d Am. Compl. ¶ 7.

On February 10, 2012, Sgt. Craig filed a second charge, this time alleging that Commander Maupin retaliated against her for filing an EEOC complaint by transferring her to the Fourth District on April 23, 2011. *See* Defs.' Mot. Summ. J. at Ex. 4. She received a right to sue letter corresponding to the second charge on February 28, 2012. 2d Am. Compl. ¶ 7.

Sgt. Craig initiated the present action by filing a civil complaint on June 28, 2011. She filed her second amended complaint against the District of Columbia and Commander Maupin

---

can be construed to request agency action and appropriate relief on the employee's behalf," *Tucker v. Howard Univ. Hospital*, 764 F. Supp. 2d 1, 7 (D.D.C. 2011), she seemingly ignores the fact that she failed to complete the portion of the questionnaire that requests agency action and, unlike the plaintiff in *Tucker*, she did not attach a letter from her attorney requesting the initiation of an investigation into her claims. Accordingly, the Court cannot treat Sgt. Craig's completion of the February 2009 Intake Questionnaire as the equivalent of filing a charge of discrimination with the EEOC, which Sgt. Craig did not do until May 19, 2009.

[7] Although Sgt. Craig dated the amended charge June 15, 2009, she stated in her deposition that she filled in the incorrect date and it should have read June 16, 2009. Craig Dep. 78:9–11.

[8] Sgt. Craig explained at her deposition that although she called the Internal Affairs Division once and asked to be transferred to someone in the EEO Office, the person who answered the phone asked for her information before transferring her, and because she did not want to provide her information, the call ended there. Craig Dep. 48:5–51:7. She did not speak with anyone in the EEO Office or mention any names to the Internal Affairs Department. *Id.*

on March 28, 2012, and this Court dismissed Sgt. Craig's claims for unliquidated damages under the DCHRA and her claims under Title VII as to Commander Maupin on August 2, 2012, *see* Order, Aug. 22, 2012, ECF. No. 33.  The following claims remain: (1) sex discrimination by the District in violation of Title VII and the DCHRA, (2) sex discrimination by Commander Maupin in violation of the DCHRA, (3) retaliation by the District in violation of Title VII and the DCHRA, and (4) retaliation by Commander Maupin in violation of the DCHRA.

The Defendants have now moved for summary judgment as to all claims on the basis of a combination of factors, including Sgt. Craig's alleged failure to: (1) exhaust administrative remedies, (2) file within the applicable statute of limitations, (3) utilize the District's anti-sexual harassment policy, (4) make out a prima facie case of sex discrimination or retaliation, and (5) establish entitlement to the relief requested.  Sgt. Craig opposes the Defendants' motion, arguing that her claims do not fail as a matter of law and that there are genuine issues of material fact that make summary judgment inappropriate.  For the reasons set forth below, the Court will deny the Defendants' motion for summary judgment as to Sgt. Craig's discriminatory hostile work environment claim against the District under Title VII and the DCHRA, but will grant summary judgment in favor of the Defendants as to the remainder of Sgt. Craig's claims.  Additionally, the Court will grant the Defendants' motion for summary judgment on the issue of liquidated damages against the District, but will deny the motion as it pertains to Sgt. Craig's request for injunctive relief from the District on the basis of her remaining claim.

### III.  ANALYSIS

### A.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [thus] the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a); *accord Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When Rule 56 is invoked, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of persuasion at trial, its burden "may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.

Once the moving party has met its burden, to defeat the motion the nonmoving party must designate "specific facts showing that there is a genuine issue for trial."  *Id*. at 324 (citation omitted).  Although the Court must view this evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *see Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23–24 (D.C. Cir. 2013), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" her position — "there must be evidence on which the jury could reasonably find for [the nonmoving party]."  *Anderson*, 477 U.S. at 252.  Moreover, the nonmoving party "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial."  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

Finally, the Court notes that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at

summary judgment." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted).  Indeed, a court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial." *Id.* (citation omitted).

### B.  Exhaustion of Administrative Remedies under Title VII

The Defendants first argue that summary judgment is appropriate as to Sgt. Craig's claims under Title VII that the District unlawfully: (1) denied her training opportunities, (2) denied her the opportunity to participate in MPD's take home vehicle program, and (3) detailed her to the Fourth District.[9]  They contend that Sgt. Craig's failure to mention the incidents in any of her EEOC charges constitutes a failure to exhaust administrative remedies as to those claims, and accordingly, the Court must grant summary judgment as a matter of law.  Sgt. Craig, on the other hand, argues that the alleged incidents constitute retaliatory harassment that is like or reasonably related to the allegations set forth in her timely 2009 EEOC charge such that they ought to be considered by this Court.[10]  As explained below, the Defendants have the better argument.

The EEOC, which has broad authority to enforce Title VII's mandates, has established

---

[9] Failure to exhaust administrative remedies is an affirmative defense, and the burden rests with the defendant.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir.1997).

[10] Sgt. Craig's memorandum in opposition to the Defendants' motion for summary judgment argues that the denial of training and a vehicle and the detail were part of a single, retaliatory hostile work environment claim exhausted by virtue of her 2009 administrative filings.  *See* Pl.'s Opp'n at 26, 28–30, 36.  Significantly, she does not argue that this retaliatory hostile work environment claim was included in her 2012 charge regarding her transfer to the Fourth District.  Nor does she contend that the transfer should be considered part of the same hostile work environment claim as her training, vehicle, and detail-related allegations.  *See id.* at 36 (identifying only the denial of training and a vehicle and the detail as the basis for her retaliatory hostile work environment claim against the District, and distinguishing that claim from her retaliatory transfer claim).  For these reasons, the Court looks only to the 2009 EEOC filings to determine whether Sgt. Craig exhausted her claim regarding the training, vehicle, and detail incidents.

detailed procedures for the administrative resolution of discrimination complaints.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  "Complainants must timely exhaust these administrative remedies before bringing their claims to court."  *Id.*  Ordinarily, this means that a plaintiff alleging a violation of Title VII must file an EEOC charge within 180 days of the date that the allegedly discriminatory act occurred.  42 U.S.C. § 2000e-5(e)(1).  In the District of Columbia, however, a "worksharing agreement" between the EEOC and the local agency tasked with investigating discrimination claims results in the automatic cross-filing of an EEOC complaint with the local agency, thereby extending the filing deadline for plaintiffs in the District to 300 days.  *See* 42 U.S.C. § 2000e-5(e)(1); *Carter v. George Washington Univ.*, 387 F.3d 872, 879 (D.C. Cir. 2004).

If a plaintiff alleges discrete acts of discrimination or retaliation – acts like a refusal to hire, termination, failure to promote, or denial of a transfer – the plaintiff's failure to comply with the applicable filing deadline will cause those claims to be time barred, "even when they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002).  If, however, a plaintiff files an administrative complaint alleging a number of separate acts that together make up a single hostile work environment claim, "the employer may be liable for all acts that are part of this single claim" so long as the employee files her charge "within 180 or 300 days of any act that is part of the hostile work environment."  *Id.* at 118.

In this case, the timeliness of Sgt. Craig's 2009 charge alleging sexual harassment and retaliation is not in question.  The charge was filed on May 19, 2009, well within 300 days of the denial of Police Segway Certification Training on November 24-26, 2008, Crisis Intervention Training in April 2009, and participation in MPD's Take Home Vehicle Program on an

unspecified date after September 23, 2008.  The May 2009 charge also preceded Sgt. Craig's detail to the Fourth District by more than nine months.  However, while the Defendants do not question the timeliness of Sgt. Craig's 2009 charge, they do question its scope.[11]  Specifically, the Defendants argue that the 2009 EEOC charge cannot be read to encompass Sgt. Craig's unfiled retaliation claims regarding the denial of training and a vehicle and her detail to the Fourth District, and that as a consequence, those claims were not exhausted.  As the Defendants point out, neither the original May 2009 EEOC charge nor the June 2009 amended version made mention of either Commander Maupin, the denial of training opportunities and a take home vehicle, or the detail to the Fourth District.[12]  Nevertheless, Sgt. Craig believes that those claims are still viable because they are "like or reasonably related to" the timely allegations of ongoing harassment and retaliation set out in her first administrative complaint.  Pl.'s Opp'n at 30 (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).

In *Park*, the D.C. Circuit Court held that a "Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations."  71 F.3d at 907 (quotation marks omitted).  This limitation serves the important function of ensuring that the charged party receives notice of the claim, and it allows for the narrowing and prompt adjudication of issues.  *Id.*  A claim is "like or reasonably

---

[11] *See, e.g., Ashraf-Hassan v. Embassy of France in U.S.*, 878 F. Supp. 2d 164, 169–73 (D.D.C. 2012) (distinguishing between exhaustion arguments that are based on timeliness and those based on scope); *Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 228 (D.D.C. 2012) ("[T]he question in this case is not whether Plaintiff filed a timely charge, but rather whether she can expand the substantive scope of this action by relying on allegations that . . . are altogether absent from her formal Charge."); *but see Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 96 (D.D.C. 2011) (collapsing the timeliness and scope inquiries to hold that "plaintiffs may incorporate non-exhausted allegations into a hostile work environment claim so long as some allegations were exhausted and all of the allegations together form one hostile environment claim.").

[12] The Court notes that if Sgt. Craig submitted any attachments along with her formal EEOC charges, neither party has mentioned their existence or provided them to the Court.

related" to charged conduct if, at a minimum, it "arise[s] from the administrative investigation

that can reasonably be expected to follow the charge of discrimination." *Id.* (quotation marks

omitted); *see also Hampton v. Schafer*, 561 F. Supp. 2d 99, 103 (D.D.C. 2008) ("[B]ecause the

alleged discriminatory conduct plaintiff uses as the foundation for his hostile work environment

claims is the same conduct about which he complained before . . . the EEOC, plaintiff has

adequately exhausted his administrative remedies.").

    Applying *Park*'s "like or reasonably related" test to the facts at hand,[13] the Court begins

by reviewing the allegations in Sgt. Craig's EEOC charge.  Sgt. Craig's amended charge, filed

on June 16, 2009, indicates that she has been discriminated against on the basis of sex and

retaliated against.  When asked about the particulars of her claim, Sgt. Craig supplied the

following:

---

[13] In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court analyzed the timely filing requirement of Title VII and held that, with respect to hostile work environment claims, a plaintiff "need only file a charge within 180 or 300 days of any act that is part of the hostile work environment," to prevent related incidents that occurred outside the statutory period from being time-barred.  *See* 536 U.S. 101, 118 (2002).  The D.C. Circuit Court has declined to decide whether or to what extent *Morgan*'s timeliness analysis affects the "like or reasonably related" standard from the *Park* line of cases.  *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (holding that it was not necessary to decide the relationship between *Morgan* and *Park* where the plaintiff failed to exhaust administrative remedies under her preferred "like or reasonably related" standard).  For present purposes, it is sufficient to note that *Morgan*'s holding regarding the timeliness of an administrative charge for exhaustion purposes does not appear to be in direct conflict with *Park*'s analysis regarding a timely-filed charge's scope.  *See Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 229 (D.D.C. 2012) (reasoning that "*Park* remains good law because it addresses the question of when a plaintiff can expand the substantive scope of a federal action by relying on allegations that appear in an intake questionnaire that are absent from a timely charge," and distinguishing *Park*, which addresses scope, from subsequent cases concerned with the question of timeliness).  In any event, this Court will follow the Circuit Court's lead in declining to decide the precise nature of the relationship between *Morgan* and *Park* because, even using Sgt. Craig's own "like or reasonably related" theory, she failed to exhaust these three claims.  *See Hudson v. Children's Nat'l Med. Ctr.*, 645 F.Supp.2d 1, 3 n. 4 (D.D.C. 2009) ("Because this Circuit has yet to address the precise reach of *Morgan*, and because . . . the plaintiff's allegations fail to satisfy even the more liberal standard announced in *Park*, the court declines to pass on this issue.").

> I was hired by the Metropolitan Police Department as a Police Officer on 10/23/88.  In April 2008, my employer discriminated against me and continues to [do] so by sexually harassing me and retaliating against me.  Sgt. Eric Levenberry sexually harasses me on a continuous basis. For example, he has asked me out on dates [and engaged in several other harassing behaviors]. . . .  Finally, because I have refused Sgt. Levenberry's advances, he has retaliated against me.  For example, he began to make disparaging remarks about me to others in the office.  I worry that he will physically hurt me if he is able to be alone with me.  I believe that I have been discriminated against because of my sex (sexual harassment), in violation of Title VII of the Civil Rights Act of 1964, as amended.

*See* Defs.' Mot. Summ. J., Ex. 3.  The administrative complaint does state a general claim of sexual harassment and retaliation occurring between April 2008 and June 2009, but it identifies only Sgt. Levenberry as the perpetrator of that harassment and retaliation.  It does not mention Commander Maupin by either name or position.  It does not suggest that anyone other than Sgt. Levenberry engaged in or condoned discriminatory or harassing conduct.  *Cf. Ashraf-Hassan v. Embassy of France in U.S.*, 878 F. Supp. 2d 164, 173 (D.D.C. 2012) (holding that employer was on notice that plaintiff's colleagues and supervisors had discriminated against the plaintiff where the EEO Charge mentioned one individual by name but also specifically stated that plaintiff's "colleagues and supervisors" had subjected her to a hostile work environment).  It does not allege that Sgt. Craig had reported Sgt. Levenberry to anyone at MPD, let alone that she was harassed as a consequence of reporting his harassment.[14]  And despite the fact that Sgt. Craig clearly demonstrated an understanding of the amendment process – which she successfully navigated in June 2009 – she did not seek to amend her 2009 charge to include either the prior, uncharged incidents or her subsequent detail to the Fourth District.[15]

Sgt. Craig asserts that her retaliatory hostile work environment claim based on the

---

[14] In fact, Sgt. Craig amended her charge to *remove* an allegation that she had reported Sgt. Levenberry's harassment to Internal Affairs.

[15] Once a party has submitted a complaint to the EEOC, she is free to amend it "to include issues or claims like or related to those raised in the complaint" at any time prior to the conclusion of the investigation. 29 C.F.R. § 1614.106(d).

training, vehicle and detail allegations "grow[s] out of" her 2009 EEOC charge, but she provides no support for this assertion, and the denial of training and a vehicle occurred months prior to the filing of her administrative complaint, which fails to make even a cursory reference to those incidents, similar conduct, or Commander Maupin.  *Cf. Cross v. Small*, No. 04-A-1253, 2006 WL 2819758, at *13–15 (D.D.C. Sept. 29, 2006) (holding that plaintiff's charge of discriminatory harassment and retaliation did not exhaust claims regarding retaliatory disparagement that occurred prior to the filing but were omitted from the particulars of the charge, which failed to include so much as a hint that the incident had occurred).  And although the Supreme Court recognized in *Morgan* the possibility that an employer could be held liable under Title VII for acts that contributed to a single hostile work environment claim but that post-dated an administrative charge, it accounted for that possibility where the acts were part of a single claim *and* the plaintiff filed a subsequent charge encompassing both the pre- and post-charge conduct.  *See Morgan*, 536 U.S. at 117 ("Subsequent events . . . may still be part of the one hostile work environment claim and *a charge may be filed at a later date and still encompass the whole*." (emphasis added)); *see also Gilbert v. Napolitano*, 958 F. Supp. 2d 9, 17 (D.D.C. 2013) ("How can an agency be expected to resolve matters internally if administrative complaints are understood to spontaneously and unpredictably encompass new claims that arise in the months after the complaint is filed? Obviously, it can't.").  Because Sgt. Craig did not file a later charge encompassing the pertinent post-charge conduct, *Morgan* seemingly offers her no relief from the exhaustion requirement.  *See also Burkes v. Holder*, 953 F. Supp. 2d 167, 176 (D.D.C. 2013) (dismissing uncharged claims of post-complaint retaliation because plaintiff "did not exhaust his administrative remedies with respect to any of the acts he alleges are a part of his retaliatory hostile work environment"); *Peterson v. Archstone*, 601 F. Supp. 2d 123, 127 (D.D.C.

2009) (dismissing uncharged claim of post-complaint retaliation where plaintiff failed to amend his administrative complaint to include the alleged retaliation).[16]

By way of response, Sgt. Craig offers two arguments: first, she argues that "a lenient standard applies" to exhaustion, and second, that Commander Maupin waived the defense of failure to exhaust administrative remedies by virtue of his failure to argue the point in his answer. *See* Pl.'s Opp'n at 30. Both arguments are unavailing. As to Sgt. Craig's lenient pleading standard argument, "[a]lthough it is true that the administrative charge requirement should not be construed to place a heavy technical burden on individuals untrained in negotiating procedural labyrinths, it is also true that the requirement of some specificity in a charge is not a mere technicality." *Park*, 71 F.3d at 907 (internal quotation marks omitted) (internal citation omitted). "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Stewart v. White*, No. 13-cv-1125, 2014 WL 3747664, at *6 (D.D.C. July 31, 2014) (quoting *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir.1997)); *see also Park*, 71 F.3d at 908 ("The goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC

---

[16] In finding that the claims at issue were not exhausted, the Court does not hold that every episode of harassment comprising a retaliatory hostile work environment claim must be detailed in a plaintiff's administrative charge. Rather, the Court holds that where a plaintiff fails to identify conduct in her administrative charge upon which she bases a civil claim under Title VII, and where she also fails to establish that the uncharged conduct is "like or reasonably related to the allegations of the charge and growing out of such allegations," she cannot recover on the basis of the uncharged allegations that are beyond the scope of her administrative complaint. *See Park*, 71 F.3d at 907; *see also Morgan*, 536 U.S. at 120 (holding that for limitations purposes, a timely-filed hostile work environment charge encompasses only those acts that "are part of the same actionable hostile work environment practice," meaning that the "pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers" (internal quotation marks omitted)).

would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship.").

Accordingly, while a complainant need not describe every factual detail of her claim to satisfy the exhaustion requirement, she cannot file "a vague or circumscribed EEOC charge" and expect that charge to "satisfy the exhaustion requirement for claims it does not fairly embrace." *Marshall*, 130 F.3d at 1098; *see als*o *Youssef v. Holder*, 881 F. Supp. 2d 93, 102 (D.D.C. 2012) (explaining that a "sweeping and non-specific statement" to the effect that the complainant's employer maintained a hostile work environment by, among other things, investigating the complainant, was likely so vague and ambiguous as to constitute a failure to exhaust administrative remedies unless the complainant provided the EEO office with additional information during the course of the investigation); *Blue v. Jackson*, 860 F. Supp. 2d 67, 75 (D.D.C. 2012) (holding that plaintiff failed to exhaust claim pertaining to his discriminatory termination because the termination involved "separate conduct that was never set forth in the administrative complaint," which alleged discrimination on the basis of other conduct).  And as to Sgt. Craig's waiver argument, although a defendant certainly may waive the affirmative defense of failure to exhaust, Sgt. Craig's claims under Title VII pertain only to the District; no Title VII claims are pending against Commander Maupin.  Commander Maupin's failure to argue for dismissal of Sgt. Craig's Title VII claims on exhaustion grounds is therefore irrelevant.

In sum, the charged and uncharged incidents of retaliation in this case involve different types of actions allegedly motivated by different oppositional activity.[17]  The incidents occurred

---

[17] The only incident of retaliatory conduct mentioned in Sgt. Craig's amended administrative complaint was a reference to Sgt. Levenberry making disparaging comments about Sgt. Craig because she had rejected his advances.  Defs.' Mot. Summ. J., Ex. 3.  In contrast, Sgt. Craig now alleges that Commander Maupin engaged in different behaviors, *i.e.,* denying her training and a vehicle and detailing her, and that he did so not because she rejected

with dissimilar frequency,[18] and were perpetrated by different individuals at different levels –

both supervisory and non-supervisory – in MPD.  In the face of these differences, Sgt. Craig has

offered not an iota of support for her bald assertion that the incidents are like or reasonably

related.  She has not given the Court any reason to believe that the allegations at issue were

likely revealed during the investigation of her allegations regarding Sgt. Levenberry.  *Cf.*

*Youssef*, 881 F. Supp. 2d at 102 (holding that plaintiff's provision of additional information

during the investigative process salvaged an otherwise inadequate charge).  Neither has she

claimed any equitable basis for avoiding the exhaustion requirement.  *See Bowden*, 106 F.3d at

437 (holding that the plaintiff "bears the burden of pleading and proving facts supporting

equitable avoidance of the defense").

The Court therefore concludes that Sgt. Craig's timely administrative charge, which

described only the harassing conduct of Sgt. Levenberry and his response to her rejection, was

not sufficient to provide notice of her uncharged claim of a retaliatory hostile work environment

created by Commander Maupin based on the denial of trainings and a vehicle and on the 2010

detail.  *Cf. Park*, 71 F.3d at 909 ("Because Park's EEOC charge contained no claims or factual

allegations that could reasonably be expected upon investigation to lead to a hostile work

environment claim, we hold that she failed to exhaust her administrative remedies for such a

claim at the EEOC."); *see also Reynolds v. Tangherlini*, 737 F.3d 1093, 1100 (7th Cir. 2013)

(holding that plaintiff's uncharged retaliation claims were not "like or reasonably related to" his

administrative charge where "the relevant claim and the administrative charge [did not] describe

---

his advances, but because she reported sexual harassment committed by another sergeant.  *See* 2d
Am. Compl. ¶¶ 53, 55.

[18] Whereas Sgt. Levenberry's harassment was allegedly continuous beginning in April
2008 until February 2010, Commander Maupin is alleged to have taken retaliatory action against
Sgt. Craig on a total of four occasions spread out over a span of roughly fifteen months.

the same conduct and implicate the same individuals" (internal quotation marks omitted)).  The

allegation that Commander Maupin retaliated against Sgt. Craig for complaining about Sgt.

Levenberry by denying her training and a vehicle and detailing her to the Fourth District in a

retaliatory manner is not "like or reasonably related" to the allegations set forth in Sgt. Craig's

2009 EEOC charge.  The Court therefore finds that Sgt. Craig failed to exhaust her

administrative remedies as to her Title VII retaliatory hostile work environment claim based on

the denial of training opportunities and a vehicle and on the February 2010 detail.  The District's

motion for summary judgment as to those claims on the basis of Sgt. Craig's failure to exhaust

administrative remedies is granted.[19]

## C.  DCHRA's Statute of Limitations

Turning from Title VII to the DCHRA, the Defendants next argue that the same subset of

claims – the denial of training opportunities and participation in the take home vehicle program

and the detail to the Fourth District – are time-barred due to Sgt. Craig's failure to abide by the

DCHRA's one-year statute of limitations for filing a civil complaint.  In opposition, Sgt. Craig

cites the ability of D.C. plaintiffs to cross-file a complaint with the EEOC and local agency

within 300 days, *see* Pl.'s Opp'n at 30, and she argues that her first EEOC complaint effectively

tolled the running of the statute of limitations for these claims until she received her right to sue

letter, Pl.'s Sur-Reply in Opp'n at 4, July 31, 2014, ECF No. 86.  Sgt. Craig is correct that a

timely-filed EEOC charge tolls the statute of limitations under the DCHRA, but as explained

above, Sgt. Craig's 2009 EEOC charge did not include the incidents in question and thus did not

---

[19] Because the Court finds that Sgt. Craig failed to exhaust her claims regarding the
trainings, vehicle, and detail, it need not and will not consider the Defendants' alternative
arguments that the incidents are discrete and do not constitute materially adverse actions, that
Sgt. Craig failed to establish that the actions were the result of gender discrimination, or that they
are inadequate to support a hostile work environment claim.

toll the limitations period as to those incidents.

Section 2–1403.16 of the D.C. Code provides that any DCHRA claim must be filed within one year of the allegedly unlawful incident's occurrence or the discovery thereof. *Ellis v. Georgetown Univ. Hosp.*, 631 F.Supp.2d 71, 77 (D.D.C. 2009). The Code further instructs that "[t]he timely filing of a complaint with the [D.C. Office of Human Rights] . . . shall toll the running of the statute of limitations while the complaint is pending." § 2–1403.16. Because a charge filed with the EEOC in the District of Columbia is automatically cross-filed with the D.C. Office of Human Rights, filing a charge with the EEOC suffices to toll the one-year statute of limitations for DCHRA claims. *See Tucker v. Howard University Hosp.*, 764 F.Supp.2d 1, 6 (D.D.C. 2011); *Ibrahim v. Unisys Corp.*, 582 F.Supp.2d 41, 45 (D.D.C. 2008) (citing *Esteños v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008)).

Once again, there is no question that Sgt. Craig's 2009 charge was timely filed. It doubtlessly served to toll the running of the statute of limitations as to the claims within the charge. But the Defendants contend that because Sgt. Craig's administrative complaints did not include her training, vehicle, and detail claims, the limitations period ran out as to those claims on February 21, 2011, a year after she was detailed. Sgt. Craig, while flatly asserting that the Defendants' statute of limitations argument is "in error," has failed to address the substance of the Defendants' argument that the limitations period was not tolled by administrative complaints that neglected to refer to the conduct in question. *See* Pl.'s Opp'n at 30. The Defendants urge the Court to treat the limitations argument as conceded, *see* Defs.' Reply to Pl.'s Opp'n at 4, July 9, 2014, ECF No. 82; *see also Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments

that the plaintiff failed to address as conceded."), but in light of both Sgt. Craig's position as the non-moving party and the analytical overlap between the exhaustion and limitations issues, the Court will proceed to analyze the limitations issue on the merits.

Borrowing from the Title VII framework, the D.C. Court of Appeals has held in the DCHRA context that "[i]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Ivey v. District of Columbia*, 949 A.2d 607, 615 (D.C. 2008) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).  Applying the same "like or reasonably related" test articulated by the D.C. Circuit Court, the D.C. Court of Appeals determined that "[i]t is sufficient that the EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts." *Id.*  Thus, where a plaintiff failed to explicitly raise a claim of personal-appearance discrimination in her EEOC complaint but the incidents giving rise to that claim were identical to the incidents alleged in her administrative complaint, the D.C. Court of Appeals concluded that the claims related back to the EEOC complaint.  *Id.* at 616.  On the other hand, where a plaintiff's administrative complaint expressly identified discriminatory actions taken by certain defendants but not others, the administrative complaint will not serve to toll the DCHRA's statute of limitations as to claims against those defendants who were not identified in the administrative complaint.  *Zelaya v. UNICCO Service Co.*, 587 F. Supp. 2d 277, 285 (D.D.C 2008) (reasoning that failure to sufficiently identify certain individuals in administrative complaint meant that those individuals did not receive adequate notice of the claims against them or the statutory opportunity to mediate); *see also Brown v. Children's Nat. Med. Ctr.*, 773 F. Supp. 2d 125, 136–37 (D.D.C. 2011) ("[P]laintiff's charge of discrimination did not name the individual defendants as the parties responsible for the

discrimination and retaliation she suffered.  Plaintiff cannot now proceed as against the individual defendants on DCHRA claims that were neither brought within the one-year statute of limitations nor filed with the EEOC or the DCOHR.").

Here, unlike *Ivey*, the incidents in question were never alleged in any of Sgt. Craig's administrative complaints.  As in *Zelaya*, the administrative complaint identified a different individual alleged to have taken different discriminatory acts, and it failed to implicate the alleged perpetrator of the uncharged acts by either name or position.  Accordingly, and for the reasons described above, *see* Part III.B, *supra*, the Court finds that Sgt. Craig's timely-filed EEOC charges failed to include the uncharged acts taken by Commander Maupin relating to training, a vehicle, and the 2010 detail.  The 2009 administrative charge therefore did not serve to toll the DCHRA's statute of limitations as to these unfiled allegations.  Because Sgt. Craig's civil complaint was filed on June 28, 2011, well beyond the one-year limitations period that closed on February 21, 2011, the Court grants the Defendants' motion for summary judgment as to Sgt. Craig's training, vehicle, and detail-related claims under the DCHRA.

### D.  The merits of Sgt. Craig's claims against the District

As to the District, Sgt. Craig asserts claims of discrimination and retaliation under both the DCHRA and Title VII.  The DCHRA, just like Title VII, prohibits certain discriminatory practices by employers.  *See* D.C. Code § 2-1402.11(a)(1).  Specifically, the DCHRA – like Title VII – makes it unlawful for an employer to "fail or refuse to hire, or to discharge, any individual; or otherwise discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment" based upon several protected categories, including sex.[20]  *Id.*

---

[20]     The DCHRA is broader than Title VII insofar as it prohibits discrimination based

Given the similarities between the statutes, it is not surprising that the D.C. Court of

Appeals "has made clear that federal case law addressing questions arising in Title VII cases is

applicable to the resolution of analogous issues raised regarding DCHRA claims." *Ali v. District

of Columbia*, 697 F. Supp. 2d 88, 92 n.6 (D.D.C. 2010) (citing *Howard Univ. v. Green*, 652 A.2d

41, 45 n.3 (D.C. 1994)); *see also, e.g.*, *Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131,

134 (D.D.C. 2004) ("This Court, too, will consider [p]laintiff's claims under [the DCHRA]

utilizing the case law developed for suits brought under Title VII."); *MacIntosh v. Bldg. Owners

& Mgrs. Ass'n Int'l*, 310 F. Supp. 2d 240, 244 (D.D.C. 2004) (noting that in analyzing a claim of

employment discrimination under the DCHRA, this Court looks to Title VII jurisprudence).

Further, "in considering claims of discrimination under the DCHRA, [courts] employ the same

three-part, burden-shifting test articulated by the Supreme Court for Title VII cases in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)."[21] *Hollins v. Fed. Nat. Mortg.

Ass'n*, 760 A.2d 563, 571 (D.C. 2000); *see also McFarland v. George Wash. Univ.*, 935 A.2d

337, 346 (D.C. 2007); *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*,

---

on the "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual," whereas Title VII prohibits discrimination only with respect to an individual's "race, color, religion, sex, or national origin." *Compare* D.C. Code § 2-1402.11(a)(1), *with* 42 U.S.C. § 2000e-2(a)(1).

[21] The *McDonnell Douglas* burden-shifting framework operates as follows: first, if a plaintiff alleges employment discrimination but lacks direct evidence to support the claim, the plaintiff bears the burden of establishing a prima facie case of discrimination or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000). If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the allegedly discriminatory or retaliatory act. *McDonnell*, 411 at 802. If the employer then proffers such a reason, "the burden-shifting framework disappears," *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009), and the central question before the court is "whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted [nondiscriminatory or non-retaliatory] reason was not the actual reason and that the employer intentionally [discriminated or retaliated] against the employee in violation of Title VII." *McGrath v. Clinton*, 666 F.3d 1377, 1383 (D.C. Cir. 2012) (quotations omitted).

515 A.2d 1095, 1099 (D.C. 1986).

Thus, because Sgt. Craig alleges the same facts and violations under both Title VII and the DCHRA, and because both statutes apply the same legal standard, the Court will analyze the claims against the District simultaneously.

### 1. Sex Discrimination

Sgt. Craig claims that the District is liable for the discriminatory hostile work environment created by Sgt. Levenberry.[22]  *See* Pl.'s Answer to Defs.' Interrog. No. 6.  The Defendants argue that even taking Sgt. Craig's allegations as true, she has failed to make out a claim of discrimination because the alleged incidents of harassment were not sufficiently severe or pervasive to give rise to a hostile work environment.  The Defendants also contend that Sgt. Craig's claims must fail because she unreasonably failed to take advantage of the District's anti-harassment policy.  Finding both of these arguments unavailing, the Court will deny the Defendants' motion for summary judgment as to Sgt. Craig's claim against the District that she

---

[22] Neither Sgt. Craig's complaint nor her briefs are models of clarity, leaving the precise scope of her sex discrimination claim unclear.  In an abundance of caution, the Court briefly addresses the possibility that Sgt. Craig claims sex discrimination on a basis other than Sgt. Levenberry's sexual harassment.  A searching review of the complaint, however, reveals only allegations that Sgt. Levenberry harassed Sgt. Craig on the basis of gender, and that both Sgt. Levenberry and Commander Maupin retaliated against Sgt. Craig for reporting the harassment.  She specifically alleges that she was denied training and a take home vehicle "because of her opposition to the harassment by Sgt. Levenberry," and not because of her gender.  2d Am. Compl. ¶ 53.  She also claims that she was detailed "for her oppositional and prior EEO activity," *id.* ¶ 55, and her second EEOC charge alleges that her transfer "was a retaliatory act, directly attributable to a previous complaint filed with the EEOC," Defs.' Mot. for Summ. J., Ex. 4.  Taking Sgt. Craig at her word, then, it appears that her sole claim of sex discrimination regards Sgt. Levenberry's sexual harassment.  She has failed to so much as allege that any of the other incidents in question occurred because of her sex.  As a result, Sgt. Craig has failed to state a separate claim of sex discrimination.  *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) ("[The] statutory text establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) *because of* the employee's race, color, religion, *sex*, or national origin." (emphasis added)).

was subjected to a discriminatory hostile work environment in violation of Title VII and the DCHRA.

It is well-established that sexual harassment is a prohibited form of sex discrimination. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (holding that a supervisor who sexually harasses a subordinate discriminates on the basis of sex).  To be actionable under Title VII, the sexual harassment must be "so severe or pervasive" as to "alter the conditions of the victim's employment and create an abusive working environment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998)); *see also Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.").  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Faragher*, 524 U.S. at 788.

To establish a prima facie case of hostile work environment based on sexual harassment, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment occurred because of her sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) there is a basis for holding the employer liable for the creation of the hostile work environment.  *See Johnson v. Shinseki*, 811 F. Supp. 2d 336, 345 (D.D.C. 2011); *see also Elam v. Bd. of Trs.*, 530 F. Supp. 2d 4, 22 n.7 (D.D.C. 2007) ("The elements of a hostile work environment claim under the DCHRA mirror the federal requirements." (citing *Lively v. Flexible Packaging Assoc.*, 830 A.2d 874, 889 (D.C. 2003))).  The environment must be both objectively and subjectively hostile when considered in light of

the totality of the circumstances, *Faragher*, 524 U.S. at 787, and relevant factors include "the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an

employee's work performance." *Harris*, 510 U.S. at 23.

### a.  Severe or pervasive conduct

In this case, Sgt. Craig is a female who argues that she was subjected to unwanted sexual

harassment by her male co-worker.  There is no question that Sgt. Craig is a member of a

protected class who alleges that she experienced unwanted harassment because of her sex.  *See*

*Davis v. Coastal International Security, Inc.*, 275 F.3d 1119, 1123 (D.C. Cir. 2002) (holding that

when the challenged conduct "involves explicit or implicit proposals of sexual activity" between

members of the opposite sex, "it is reasonable to assume those proposals would not have been

made to someone of the same sex" (internal quotation marks omitted)).  The Defendants argue,

however, that Sgt. Craig has failed to establish the fourth element of a hostile work environment

claim because she has failed to show that the harassment was so severe or pervasive as to affect a

term, condition, or privilege of her employment.

As the Defendants point out, "even multiple instances of physical contact and sexual

advances may not be sufficient to meet the demanding legal standard for a hostile work

environment." *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 77 (D.D.C. 2013).  And in *Akonji v.*

*Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 97–98 (D.D.C. 2007), this Court held that where a

plaintiff alleged that her supervisor touched the plaintiff's buttocks, tried to kiss her and touch

her on multiple occasions, asked her out and told her she was beautiful, the plaintiff failed to

allege harassment of sufficient severity or pervasiveness to constitute a hostile work environment

claim.  *Id.* (holding that allegations of five discrete acts over a two-year period along with

"infrequent inappropriate comments and staring" did not reach the level of severe or extreme

conduct prohibited by Title VII).  By way of comparison, the Defendants argue, Sgt. Craig is

here alleging only four discrete incidents of harassment that occurred over a span of six or seven

months: (1) Sgt. Levenberry asking her out, (2) his touching his groin while stating that was

where babies came from, (3) his picking her up and placing his hands on her buttocks, and (4) his

calling her an offensive name while pointing his finger in her face in a manner that she viewed as

physically threatening.

Despite the Defendants' best efforts to recast Sgt. Craig's hostile work environment

claim as one regarding only four discrete incidents, the record simply will not support such a

finding.  As Sgt. Craig rightly points out, a number of her assertions are missing from the

Defendants' four-incident summary, including her allegations that: (1) Sgt. Levenberry

repeatedly commented on the propriety of her attire as well as her attractiveness in a way that

made her feel uncomfortable; (2) that he trapped her between his legs and refused to let her up,

telling her to be quiet when she tried to pull his arms away; (3) that he rubbed her hair without

permission; (4) that he routinely looked at her in a "lecherous" manner; (5) that he made an

inappropriate comment regarding Sgt. Craig's mood and the two of them not sleeping together;

(6) that he made an inappropriate comment about the man he believed she was dating, telling her

to "fuck up, not down;" and (7) that Sgt. Levenberry routinely disrespected and undermined Sgt.

Craig.  Even setting aside complaints regarding Sgt. Levenberry's non-sexual behavior,

inappropriate comments, and stares, the Court is left with at least six troubling incidents: one

unwelcome romantic proposition, one lewd gesture, three incidents of unwanted touching that

included two incidents of physical restraint, and one altercation that involved physically

threatening behavior coupled with verbal abuse, all of which allegedly occurred in a span of six

or seven months.  *Cf. Akonji*, 517 F. Supp. 2d at 99 (holding that five instances of alleged harassment were not sufficiently severe or pervasive where, among other things, "well over a year passed between the early incidents involving touching and the most recent one").

And as Sgt. Craig points out, the Defendants' presentation of even the limited subset of incidents that they acknowledge fails to include all pertinent details about those incidents.   For example, Sgt. Craig testified not only that Sgt. Levenberry picked her up, threw her over his shoulders, and grabbed her buttocks, but also that he ignored her repeated requests to be released and that he refused to put her down until she began kicking and screaming.  2d Am. Compl. ¶ 36. And although the Defendants acknowledge Sgt. Craig's allegation that Sgt. Levenberry called her a name and that she perceived him as physically threatening, they fail to mention that Sgt. Levenberry "pressed up against" Sgt. Craig, getting so close to her that his chest pushed against her and she had to step back several steps.   Craig Dep. 89:2–90:4.  Even after Sgt. Craig stepped back, she alleges that he continued advancing towards her while pointing his finger in her face and calling her a "fucking bitch."  *Id.*  Both of these incidents, when described in full and considered alongside Sgt. Craig's other allegations, suggest the kind of serious and objectively "physically threatening or humiliating" conduct that supports a hostile work environment claim. *Harris*, 510 U.S. at 21–23.

Like the plaintiff in *Johnson*, Sgt. Craig has alleged a pattern of escalating harassment that prompted her to seek medical treatment for stress and that culminated in an altercation that left her fearing for her safety.  *Cf.* 811 F.Supp.2d at 346 (holding that the escalating nature of the harassment, along with the fact that it caused the plaintiff to leave work and seek medical treatment, was sufficient to constitute a hostile work environment); *see also id.* (holding that "evidence of [the plaintiff's] mental state during this period provides further proof upon which a

jury could find the existence of a hostile work environment").  According to Sgt. Craig, the harassment was so severe and pervasive that: (1) she avoided the sergeants' office, which negatively impacted her work; (2) she had to take leave to deal with the stress; (2) she had a hard time even getting out of bed; (3) she began attending weekly counseling through the Employee Assistance program to deal with her emotional distress; and (4) her physician prescribed her medication for the same.  *See* Craig Dep. 164:19–165:19; 2d Am. Coml. ¶¶ 45, 58; *see also Harris*, 510 U.S. at 21–23 (holding that courts should consider, among other factors, whether the alleged conduct "unreasonably interferes with an employee's work performance").

Viewing the allegations as a whole, the Court concludes that there is a genuine dispute of material fact as to whether Sgt. Levenberry's conduct was so severe or pervasive as to constitute a hostile work environment.  *Cf. Baker v. Library of Cong.*, 260 F. Supp. 2d 59, 67 (D.D.C. 2003) (finding plaintiff made out prima facie case of sexual harassment where she alleged, among other things, that a co-worker told her not to fall in love with him and implied that she was a homosexual, and that she was harassed and intimidated).

### b. The District's liability

Having found that there is a genuine issue of material fact as to the severe or pervasive element of Sgt. Craig's prima facie case, the Court must still determine whether the District can be held liable for Sgt. Levenberry's actions.  If the District cannot be held liable, then Sgt. Craig's hostile work environment claim fails as a matter of law.

An employer's liability for a hostile work environment created by its employees is analyzed differently depending on whether the harasser is the plaintiff's supervisor or co-worker. The parties have briefed this issue under the assumption that the Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries Inc. v. Ellerth*,

524 U.S. 742 (1998) control this case.  In *Faragher*, the Court established that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." 524 U.S. at 807.  An employer may avoid liability, however, if it can establish the following two elements of the *Faragher/Ellerth* defense: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Id.*; *see also Burlington, 524 U.S. at 765.*

In this case, however, the alleged harasser is the plaintiff's co-worker, not her supervisor. As a result, a different standard governs—the negligence standard set forth in *Curry v. District of Columbia*, 195 F.3d 654, 659 (D.C. Cir. 1999); *see also Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2448 (2013) (holding that negligence, not the vicarious liability test set forth in *Faragher* and *Ellerth*, "provides the better framework for evaluating an employer's liability" when the harassing employee does not have supervisory authority over the victim).  In *Curry*, the D.C. Circuit found that "[a]n employer's liability for a hostile work environment sexual harassment claim differs depending on who does the harassing." 195 F.3d at 659.  When the harasser is not a supervisor, "[a]n employer may be held liable for the harassment of one employee by a fellow employee (a non-supervisor) if the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action."  *Id.* at 660.  Therefore, in co-worker harassment cases, the burden falls on the plaintiff to prove that the employer was negligent and not on the employer to prove the elements of the *Faragher/Ellerth* affirmative defense.  *See Vance*, 133 S. Ct. at 2450.

Unfortunately, neither party has briefed the issue of employer liability under the

applicable negligence standard articulated in *Curry* and *Vance*.  The District argues that the

*Faragher/Ellerth* defense applies because Sgt. Craig waited until late September 2008 to report

harassment that allegedly began in March 2008, and that whatever corrective action the District

took must have been sufficient because the harassing conduct ceased after Sgt. Craig reported it.

On the other hand, Sgt. Craig contends that she reported the harassment to a superior – Lt. Hunt

– on at least one occasion or perhaps twice in the spring and summer of 2008 without results.

The District's anti-harassment policy provides that if an employee believes she is being

sexually harassed, "the situation should be discussed immediately with a supervisor, who shall in

turn immediately notify the Diversity and EEO Compliance Unit, Office of Professional

Responsibility."  Defs.' Mot. Summ. J., Ex. 5.  Therefore, drawing all inferences in Sgt. Craig's

favor, it appears that the District knew or should have known of the harassment as early as

March 2008 when Sgt. Craig first reported the harassment to Lt. Hunt, but that the harassment

continued unchecked and intensified, leading up to the September 2008 incident that she reported

to Lt. Janifer and Commander Maupin.  Commander Maupin told Sgt. Craig to stay away from

Sgt. Levenberry after that incident, but he allegedly took no other action, and Sgt. Craig contends

that Sgt. Levenberry continued to harass her by reporting her absent at roll call until her 2010

detail to the Fourth District.

In the absence of appropriate briefing by the Defendants, and in light of the record

presently before the Court, the Court cannot conclude as a matter of law that Sgt. Craig has

failed to establish the District's negligence.  Treating Sgt. Craig's factual allegations as true,[23]

---

[23] Although the Defendants would have us discredit Sgt. Craig's testimony as self-serving
and conclusory, it would be inappropriate for the Court to ignore or discredit the sworn
statements of fact provided a non-moving party when analyzing a motion for summary judgment.
*See Desmond v. Mukasey*, 530 F.3d 944, 964 (D.C. Cir. 2008) (explaining that "there is no rule
of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case

and drawing all inferences in her favor, there appears to be a genuine issue of material fact regarding whether the District knew or should have known of the harassment. Sgt. Craig claims to have reported Sgt. Levenberry's harassment on at least three separate occasions and to at least three different supervisors. Additionally, the parties dispute whether the District implemented appropriate corrective action. The Court therefore must deny the Defendants' motion for summary judgment as to the discriminatory hostile work environment claim against the District under Title VII and the DCHRA.

## 2. Retaliation

Sgt. Craig next alleges that the District is liable for Commander Maupin's retaliatory transfer of Sgt. Craig to the Fourth District in 2011 after she filed her first EEOC charge.[24]

---

of discrimination that could withstand a summary judgment motion" (quoting *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005))). The Defendants' argument to the contrary is based upon a misreading of *Arrington v. United States*, 473 F.3d 329, 342–43 (D.C. Cir. 2006). In *Arrington*, the D.C. Circuit Court held that "summary judgment is '*most likely* when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.'" *Id.* at 343 (citation omitted). Although Sgt. Craig's testimony is largely unsupported by corroborating evidence, the Defendants have not suggested that Sgt. Craig perjured herself. The Court will therefore decline the Defendants' invitation to disregard Sgt. Craig's sworn factual allegations, the credibility of which is appropriately determined by a jury.

[24] Sgt. Craig's claim of retaliatory transfer is her only viable retaliation claim against the District, and thus it is the only claim analyzed in this section. As previously discussed in Parts III.B and III.C of this opinion, Sgt. Craig's claim that Commander Maupin created a retaliatory hostile work environment by denying her trainings and a take-home vehicle and by detailing her to the Fourth District is barred under both Title VII and the DCHRA. In addition, although Sgt. Craig suggests that Sgt. Levenberry retaliated against her by making disparaging comments, she has offered no potentially admissible evidence to support this claim. *See* n. 5, supra. To the extent that Sgt. Craig may wish to pursue a separate claim of retaliatory hostile work environment on the basis of Sgt. Levenberry's reporting her absent because she complained about him, Sgt. Craig neither established such a claim in her complaint, *see* 2d Am. Compl. ¶ 46 (alleging that Sgt. Levenberry misinformed their supervisors about her attendance because she avoided him, not because she reported him), nor argued in support of such a claim in her opposition to the Defendants' motion for summary judgment, *see* Pl.'s Opp'n at 35–36 (arguing only that the District is liable for retaliatory acts committed by Commander Maupin, not Sgt.

According to the Defendants, however, there is no evidence to support a causal link between Sgt. Craig's protected activity in 2009 and the transfer in 2011. They also contend that the lateral transfer is not a materially adverse action. Although the Court finds that there is evidence of a causal connection between Sgt. Craig's EEOC charge and her subsequent transfer, based on the facts as alleged by Sgt. Craig, the Court agrees with the Defendants that the lateral transfer at issue is not materially adverse and thus is insufficient as a matter of law to support a claim of retaliation.

### a. Causal connection

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee because the employee "'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Manuel v. Potter*, 685 F. Supp. 2d 46, 65 (D.D.C. 2010) (citing 42 U.S.C. §2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). To establish a prima facie case of retaliation, Sgt. Craig must demonstrate that she engaged in a protected activity and that her employer took materially adverse action against her because she engaged in that activity. *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013).

The Defendants do not dispute the fact that Sgt. Craig's filing of an EEOC charge in 2009 constituted protected activity. Instead, they contend that the passage of time between Sgt. Craig's filing of her administrative complaint in 2009 and the transfer in 2011 precludes a finding of causation. The Defendants are correct insofar as they acknowledge that close

---

Levenberry). Even if Sgt. Craig had not waived the claim, though, it clearly would have failed on the merits because an allegation that a co-worker misreported her attendance on an unspecified number of occasions, standing alone, lacks the requisite severity to support a retaliatory hostile work environment claim. *See Morgan*, 536 U.S. at 116 (defining a hostile work environment as ubiquitous intimidation, insult and ridicule so pervasive as to negatively affect the plaintiff's day-to-day working life).

temporal proximity can establish causation, but they miss the mark by suggesting that temporal proximity is the only means of showing causation. *See Sharma v. District of Columbia*, 791 F. Supp. 2d 207, 219–20 (D.D.C. 2011); *Casole v. Johanns*, 577 F. Supp. 2d 138, 141 (D.D.C. 2008). Moreover, the Defendants seem to ignore Sgt. Craig's deposition testimony stating that during her meeting with Commander Maupin and a union representative to discuss Sgt. Craig's transfer-related grievance, Commander Maupin stated that Sgt. Craig was transferred to the Fourth District because she had made an EEOC complaint. Craig Dep. 56:10–58:2. The Court is obligated to credit Sgt. Craig's non-conclusory, factual allegations regarding the cause of her transfer, and as such, the Court finds that Sgt. Craig has alleged facts supporting her claim that she was transferred because of her protected activity. The only question remaining is whether Sgt. Craig's transfer constituted a materially adverse action.

### b. Materially adverse action

Title VII offers no protection against trivial harms, petty slights, ordinary rudeness, or minor annoyances, and it does not establish "a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). It does, however, forbid retaliation in the form of a materially adverse action, meaning that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks omitted). Whether a particular action is material is a context-specific question that "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71 (citation omitted).

The Defendants contend that because Sgt. Craig's transfer to the Fourth District involved no changes in her benefits, grade level, duties, or compensation, it constitutes a lateral transfer

that cannot be materially adverse.  *See Hernandez v. Gutierrez*, 850 F. Supp. 2d 117, 122

(D.D.C. 2012) (holding that a transfer did not qualify as materially adverse where it was not

accompanied by a significant change in responsibilities).  Sgt. Craig counters by arguing that the

transfer was material because the Fourth District was an unspecified distance farther from her

home, she had worked at the Seventh District for roughly 15 years, and the transfer "marked her

as a trouble maker."  Pl.'s Opp'n at 36–37.

  In most cases, the question of whether a particular transfer is materially adverse should

be left to the jury to determine.  *Id.*; *see also Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir.

2007) ("The court may not take that question away from the jury if a reasonable juror could find

that the reassignment left the plaintiff with significantly diminished responsibilities.").  For

example, when a plaintiff contends that a consequence of his reassignment was that he lost all

supervisory responsibilities and received less significant duties, he has presented a genuine issue

as to whether the reassignment constituted a materially adverse action.  *See Geleta v. Gray*, 645

F.3d 408, 412 (D.C. Cir. 2011); *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 607 (D.C. Cir.

2010) (holding that a reasonable jury could conclude from the job descriptions that attorneys in

the plaintiff's old position had "significantly different responsibilities" than attorneys at the

position to which he was reassigned).  If however, a plaintiff provides only expressions of

subjective dissatisfaction with her new position and fails to allege that the transfer had any

objectively adverse consequences, she has failed to show that her lateral transfer was materially

adverse and summary judgment is appropriate.  *See Hernandez*, 850 F. Supp. at 122–23 (holding

that transfer of employee that resulted in the employee's general dissatisfaction with her new

position but that was unaccompanied by any change in pay grade or job responsibilities was not

an adverse action); *see also Burlington*, 548 U.S. at 68 ("We refer to reactions of a reasonable

employee because we believe that the provision's standard for judging harm must be objective.").

A careful review of the record in this case reveals that Sgt. Craig has offered no factual basis on which a reasonable jury could conclude that her transfer constituted a materially adverse action.[25]  She does not dispute the fact that her transfer to the Fourth District was a lateral transfer; she does the same job with the same title, her tour of duty has remained the same, and she has retained both her seniority and her assignment to the day shift.  *See* Craig Dep. 163:6–12; Defs.' Statement of Facts No. 34.  Unlike the plaintiffs in *Geleta* and *Pardo-Kronemann*, however, Sgt. Craig has not identified a single fact that would suggest that her lateral transfer resulted in any change or reduction in responsibilities, duties, benefits, or prospects for advancement.  Neither has she alleged that working at the Fourth District is more dangerous,[26] more demanding, less prestigious, or less rewarding than her work at the Seventh District.  *Cf. Burlington*, 548 U.S. at 71 (holding that although "reassignment of job duties is not automatically actionable," the plaintiff in that case established the material adversity of her reassignment by showing that the new assignment was less prestigious, "more arduous and dirtier").  In fact, Sgt. Craig has failed to allege that her work at the Fourth District is dissimilar

---

[25] Although Sgt. Craig's unsupported allegation that the transfer was materially adverse was sufficient to clear the low burden imposed by Federal Rule of Civil Procedure 8(a)(2) at the motion to dismiss stage of these proceedings, the Defendants correctly point out that the burden on the plaintiff at summary judgment is different.  *See Garay v. Liriano*, 943 F. Supp. 2d 1, 20 (D.D.C. 2013) ("Summary judgment is the put up or shut up moment in a lawsuit, when a party must show the evidence it has that would convince a trier of fact to accept its version of the events." (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008))).

[26] In fact, the Court takes judicial notice of the fact that the Fourth District appears to contain less violent crime than the Seventh District.  *Compare* Crime Statistics – Fourth District: Annual Crime Totals 2008-2012, Metropolitan Police Department, http://mpdc.dc.gov/node/199542 (last visited Nov. 13, 2014), *with* Crime Statistics – Seventh District: Annual Crime Totals 2008-2012, Metropolitan Police Department, http://mpdc.dc.gov/node/199602 (last visited Nov. 13, 2014).  *See also Pharm. Research & Manufacturers of Am. v. U.S. Dep't of Health & Human Servs.*, No. 13-cv-1501, 2014 WL 2171089, at *3 (D.D.C. May 23, 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.").

in any way from her work at the Seventh District.

Instead, Sgt. Craig bases her assertion of material adversity on claims that the Fourth District is less desirable because it is farther from her home and that she did not want to leave the place she had worked for 15 years. As to the claim that the Fourth District is farther from her home than the Seventh District, Sgt. Craig has failed to provide the Court with any basis for assessing the materiality of her assertion. She has not alleged any change in commuting times or specified the comparative distances involved.[27] Critically, she has failed to so much as allege that the change in geography has had any impact on her whatsoever. *See Burlington*, 548 U.S. at 67 (holding that Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). Thus, although one could imagine a scenario where a reassignment to a remote office resulted in significant and objective hardship for an employee, Sgt. Craig has presented no evidence to support such a finding here.

Sgt. Craig's only other grounds for finding the transfer to be materially adverse – that she did not want to leave the place she had worked for 15 years and that she was afraid that others might view her as a trouble-maker because she was transferred – represent the kind of "'purely subjective injuries'" like "dissatisfaction with a reassignment, public humiliation, or loss of reputation" that do not constitute adverse actions within the scope of Title VII's anti-retaliation provision. *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002)); *Sledge v. District of Columbia*, No. 11-cv-1888, 2014 WL 3845798, at *11 (D.D.C. Aug. 6, 2014); *see also Garza v. Wautoma Area Sch. Dist.*, 984 F. Supp. 2d 932, 942 (E.D. Wis. 2013) (rejecting claim that a lateral transfer was materially adverse

---

[27] Given the District's small size – 61.05 square miles, *see* State and County QuickFacts, U.S. Census Bureau (Jul. 8, 2014), http://quickfacts.census.gov/qfd/states/11000.html -- it is possible that any change in office location is not material. Certainly, Sgt. Craig has offered no basis for finding an unspecified change in distance from home material in this case.

solely because it could be viewed by co-workers as a punishment).  And as this Court explained

in *Zelaya v. UNICCO Service Co.*, 733 F. Supp. 2d 121, 132 (D.D.C. 2010), a lateral transfer is

not materially adverse simply because a plaintiff may lose the relationships she had fostered with

individuals at her first job site during her years of employment there.  *Id.*  Although a plaintiff's

loss of relationships may be subjectively detrimental, her "subjective dissatisfaction with

working conditions, without more," is insufficient to establish the requisite material adversity

necessary to make out a retaliatory transfer claim.  *Id.*  In this case, Sgt. Craig has offered

nothing to buttress her claims of subjective dissatisfaction.  She does not allege that working in a

different district will have any impact on her advancement potential, seniority, duties,

responsibilities, schedule, work assignments, or any other facet of her job.  Thus, although Sgt.

Craig is correct in arguing that a lateral transfer can constitute a materially adverse action

sufficient to give rise to a Title VII claim, she has failed to show that the transfer in question was

such an action.[28]  *See Martin v. Locke*, 659 F. Supp. 2d 140, 150 (D.D.C. 2009) (recognizing that

a lateral transfer may be materially adverse but finding that "plaintiff's generalized impressions

about the inferiority of her new job, unsupported by any specific factual allegations, do not rise

to this level").

Accordingly, on this record, the Court cannot conclude that Sgt. Craig's 2011 transfer

was materially adverse.  The Court therefore finds that the District is entitled to summary

judgment as a matter of law regarding Sgt. Craig's retaliation claim due to her failure to establish

that the 2011 transfer was materially adverse.

---

[28] The Court's finding that Sgt. Craig's transfer was not materially adverse should not be
taken to mean that no transfer of a law enforcement officer from one district to another could be
materially adverse.  Indeed, the Court could readily imagine a situation where a transfer could
dissuade a reasonable officer from making or supporting a charge of discrimination if, for
example, the transfer were accompanied by unfavorable hours and more dangerous duties, or the
reduced availability of career-enhancing assignments.

### E.  The merits of Sgt. Craig's claims against Commander Maupin

Unlike Title VII, the DCHRA allows for individual liability under certain circumstances. *Purcell v. Thomas*, 928 A.2d 699, 715 (D.C. 2007) (concluding that the DCHRA does not "preclude a claim against individual management and supervisory employees involved in committing the allegedly discriminatory conduct," and holding that because the defendant "was a high level official . . . who exercised extensive supervisory, management and administrative authority over the corporation, he was individually liable . . . under the DCHRA"); *see also Zelaya v. UNICCO Serv. Co.*, 587 F.Supp.2d 277, 284–85 (D.D.C. 2008) (concluding that plaintiff's former supervisor could be held individually liable under the DCHRA).  Sgt. Craig's claims against Commander Maupin – that he discriminated against Sgt. Craig by aiding and abetting Sgt. Levenberry's sexual harassment, and that he retaliated against her by transferring her in 2011 – are thus brought exclusively as claims under the DCHRA.  The Court addresses the Defendants' challenges to each claim in turn.

### 1.  Sex Discrimination

Sgt. Craig contends that Commander Maupin discriminated against her on the basis of sex in violation of the DCHRA by virtue of his having "aided and abetted Sgt. Levenberry's harassment after the harassment was reported to him in early October 2008." [29]  Pl.'s Opp'n at 34.  By way of evidence, Sgt. Craig points to the facts that: (1) Commander Maupin did not follow-up on her report of harassment or, to her knowledge, punish Sgt. Levenberry; (2) his failure to act facilitated Sgt. Levenberry's continued harassment of Sgt. Craig by means of his reporting her absent at roll call, and (3) Commander Maupin reassigned Sgt. Craig out of the

---

[29] As explained in n.22, *supra*, Sgt. Craig has not stated a claim of sex discrimination separate and apart from her claim that Sgt. Levenberry sexually harassed her.

Seventh District when he should have moved Sgt. Levenberry.[30]  The Defendants, on the other

hand, point out that the conduct about which Sgt. Craig complained to Commander Maupin

ceased after she made the complaint, and that nothing in the record supports a finding that

Commander Maupin aided or abetted Sgt. Levenberry's harassing conduct.[31]

     The DCHRA makes it unlawful "for any person to aid, abet, invite, compel, or coerce the

doing of any of the acts forbidden under the provisions of this chapter or to attempt to do so."

D.C. Code § 2–1402.62.  According to the D.C. Court of Appeals, "[a]n aider or abettor is one

who in some sort associate[s] himself with the venture, . . . participate[s] in it as something he

wishe[s] to bring about, [and] seek[s] by his action to make it succeed."  *Wallace v. Skadden,*

*Arps, Slate, Meagher & Flom*, 715 A.2d 873, 888 (D.C. 1998) (quoting *Roy v. United States*, 652

A.2d 1098, 1104 (D.C. 1995)) (alterations in original).  More specifically, in the context of a

claim under the DCHRA that a supervisor aided or abetted the sexual harassment of his

subordinate, the supervisor will be liable if the plaintiff proves that the supervisor "knew or

should have known that the plaintiff was being sexually harassed, and if he repeatedly refused to

take prompt action to end the harassment."  *Id.* at 888 (internal quotation marks omitted); *Martin*

*v. District of Columbia*, 968 F. Supp. 2d 159, 165 (D.D.C. 2013).  The Court will therefore

review the record evidence regarding Commander Maupin's knowledge of Sgt. Levenberry's

harassment and his response.

     Although Commander Maupin testified that Sgt. Craig never told him that Sgt.

Levenberry was sexually harassing her, Maupin Dep. 68:2–69:13, at the summary judgment

---

    [30] The Court notes that Sgt. Craig does not explain how assigning Sgt. Craig to a different district than Sgt. Levenberry, thereby ending all contact between the two, could be viewed as either aiding or abetting Sgt. Levenberry's harassment of Sgt. Craig.

    [31] The Defendants do not argue that Sgt. Craig's claim that Commander Maupin was complicit in Sgt. Levenberry's harassment is time-barred.  The Court therefore does not address the issue.

stage, the Court will credit Sgt. Craig's assertions to the contrary.  According to Sgt. Craig, she

advised Commander Maupin in early October 2008 that Sgt. Levenberry had been harassing her.

*See* Craig Dep. 21:1–3.  She told him about the September 2008 roll call altercation, the incident

where Sgt. Levenberry picked her up and put his hands on her buttocks, that Sgt. Levenberry had

asked her out, and that she was sick of Sgt. Levenberry's behavior and did not feel safe.  *Id.* at

21:4–22:15.  When Commander Maupin asked Sgt. Craig what she wanted him to do about the

situation, she told him that she did not want to be around Sgt. Levenberry anymore.  *Id.* at 23:10–

17.  Commander Maupin responded by telling Sgt. Craig not to talk to Sgt. Levenberry and to

stay away from him.  *Id.* at 23:18–20.  Sgt. Craig admits that she had no further contact or

communication with Sgt. Levenberry after this date, *id.* at 176:03–09, but she contends that Sgt.

Levenberry continued to harass her in other ways.  Nevertheless, she admits that she never spoke

to Commander Maupin about Sgt. Levenberry again after the October 2008 meeting, *id.* at

45:20–46:1, 136:18–21, and she does not know if anyone else informed Commander Maupin

about Sgt. Levenberry's post-meeting conduct, *id.* at 28:14–19.

On this record, the Court finds that Sgt. Craig has failed to establish a claim against

Commander Maupin under the DCHRA for aiding and abetting Sgt. Levenberry's sexual

harassment.  Sgt. Craig admits that she had no further contact or communication with Sgt.

Levenberry after she reported him to Commander Maupin, and she does not allege that the

incidents that she complained about reoccurred after their meeting.  Although Sgt. Craig

contends that Sgt. Levenberry harassed her in new ways after the October 2008 meeting, she also

admits that she never brought those actions to Commander Maupin's attention.  Without any

evidence that Sgt. Craig complained again or otherwise informed Commander Maupin that Sgt.

Levenberry continued to harass her even after the two stopped interacting per his instructions,

the Court cannot find that Commander Maupin "*repeatedly* refused to take prompt action to end the harassment." *Wallace*, 715 A.2d at 888 (emphasis added); *see also Martin v. District of Columbia*, 968 F. Supp. 2d 159, 165 (D.D.C. 2013) (holding that without evidence that the supervisor was on notice of retaliation, there was no basis to find that he aided or abetted it).

Thus, in the absence of any evidence that Commander Maupin was on notice of Sgt. Levenberry's post-meeting behavior, or that he refused multiple requests to end harassment, the Court finds that Sgt. Craig has failed to show that Commander Maupin sought "by his action to make [Sgt. Levenberry's harassment] succeed." *Wallace*, 715 A.2d at 888 (internal quotation marks omitted). The Court therefore grants the Defendants' motion for summary judgment as to Sgt. Craig's claim that Commander Maupin aided and abetted Sgt. Levenberry's sexual harassment of Sgt. Craig in violation of the DCHRA.

### 2. Retaliation

In addition to her discrimination claim against Commander Maupin, Sgt. Craig also brings a claim of retaliation under the DCHRA.[32] She alleges that Commander Maupin retaliated against her for filing her first EEOC charge by transferring her to the Fourth District. Pl.'s Opp'n 36–37. As explained above in Part III.D.2, however, the Defendants have argued and the Court agrees that Sgt. Craig has failed to establish that her lateral transfer constituted a materially adverse action that would dissuade a reasonable worker from filing an EEOC charge.

The DCHRA, like Title VII, contains an anti-retaliation provision that makes it unlawful "to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of

---

[32] As set forth above in Part III.C, the Court has granted the Defendants' motion for summary judgment as to Sgt. Craig's claims against both the District and Commander Maupin regarding the denial of training and a vehicle and the 2010 detail for failure to file within the DCHRA's one-year statute of limitations. The Court therefore does not analyze the merits of those claims.

. . . any right granted or protected under [the DCHRA]." D.C. Code § 2–1402.61.  Accordingly,

the D.C. Court of Appeals has construed the DCHRA to "guarantee employees the same

protection from retaliation as is provided by the so-called 'opposition clause' in Title VII."

*Vogel v. D.C. Office of Planning*, 944 A.2d 456, 463 n.12 (D.C. 2008).  A plaintiff seeking to

establish a prima facie case under the DCHRA is thus required, just as in the Title VII context, to

show that "a reasonable employee would have found the challenged action materially adverse

which . . . means it well might have dissuaded a reasonable worker from making or supporting a

charge of  discrimination."  *Propp v. Counterpart Int'l*, 39 A.3d 856, 863–64 (D.C. 2012)

(quoting *Burlington*, 548 U.S. at 68).

Because Sgt. Craig has failed to show that her lateral transfer to the Fourth District

constituted a materially adverse action, she has failed to make out a prima facie case of

retaliation.  Thus, for the reasons set forth in Part III.D.2 of this opinion, the Court will grant the

motion for summary judgment as to Sgt. Craig's retaliation claim against Commander Maupin

under the DCHRA.[33]

**F.  Claims for injunctive relief and liquidated damages related to the District's conduct**

For their final argument, the Defendants contend that Sgt. Craig's requests for injunctive

relief from the District must fail, along with any claim for liquidated damages.  The Defendants

note that, to the extent that Sgt. Craig seeks injunctive relief from the District in the form of a

return to the Seventh District, she has shown no entitlement to that relief because the transfer to

the Fourth District was not materially adverse.  Additionally, the Defendants argue that because

Sgt. Craig has provided no evidence that she suffered any decrease in salary, her claim for

---

[33] Because the Court has determined that the Defendants are entitled to summary judgment as to all of Sgt. Craig's claims against Commander Maupin, the Court need not and will not address the Defendants' additional argument that the relief that Sgt. Craig requests from Commander Maupin is unavailable.

liquidated damages must also fail.  Sgt. Craig, by way of opposition, notes that her request for injunctive relief is not limited to a transfer back to the Seventh District and that it is too early at this stage of the litigation to determine appropriate relief.  For the reasons that follow, the Court will grant the Defendants' motion for summary judgment on the issue of liquidated damages but will deny the motion as to the availability of injunctive relief.

Beginning with the issue of liquidated damages, Defendants correctly point out that Sgt. Craig has not produced any evidence of a change in salary that might support an award of liquidated damages.  In fact, Sgt. Craig has provided no evidence that she is entitled to any specific quantity of damages at any point in this litigation, either pre- or post-discovery.  Her complaint requests an unspecified quantity of "compensatory and general damages, subject to proof," 2d Am. Compl. at 18, but when asked to "itemize and describe all damages" she had suffered, Sgt. Craig failed to provide any sort of itemization, accounting, or sum.  *See* Pl.'s Resp. to Defs.' Interrog. No. 18.  Then, in response to the Defendants' motion for summary judgment on the issue of her entitlement to liquidated damages, Sgt. Craig offered only two sentences on the subject, stating that she "is unable to determine what the posture of the case will be at the trial," and thus "will request that relief for Sgt. Craig be deferred until then."  Pl.'s Opp'n at 38.

Sgt. Craig appears to misapprehend the nature of liquidated damages.  "Damages are considered to be liquidated if at the time they arose, they were 'an easily ascertainable sum certain."[34]  *Lindsey v. District of Columbia*, 810 F. Supp. 2d 189, 202 (D.D.C. 2011); *cf. Black's Law Dictionary* 419 (8th ed. 2004) (defining unliquidated damages as "[d]amages that cannot be determined by a fixed formula and must be established by a judge or jury").  By definition, then,

---

[34] For example, back pay awards and lost retirement benefits are easily ascertainable and thus qualify as liquidated damages, while "compensatory damages that are not easily ascertainable, such as emotional distress and pain and suffering, are unliquidated . . . ."  *Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 157 (D.D.C. 2013).

Sgt. Craig should have been able to easily ascertain the sum of liquidated damages she seeks prior to trial, but she has failed to do so or to establish that she will be able to do so in the future. Additionally, as the Defendants note, Sgt. Craig's opposition to their motion for summary judgment does not dispute the Defendants' assertion that she has not provided sufficient evidence of liquidated damages.  *See* Pl.'s Opp'n at 37–38.  The Defendants therefore urge the Court to treat the issue as conceded.[35]  *See COMPTEL v. FCC*, 945 F. Supp. 2d 48, 55 (D.D.C. 2013) ("Where a party fails to address arguments raised by the opposing party's motion for summary judgment, the Court may treat those arguments as conceded."); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Accordingly, due to both Sgt. Craig's failure to produce evidence of liquidated damages and her failure to contest the Defendants' argument regarding the inadequacy of the evidence presented, the Court will award summary judgment to the Defendants on the issue of liquidated damages.[36]

As to the availability of injunctive relief, the Defendants correctly point out that Sgt. Craig is not entitled to a transfer back to the Seventh District in light of the Court's finding that

---

[35] Although Sgt. Craig's opposition contained a cursory reference to damages, her sur-reply lacks even that, and contains no mention of the subject of liquidated damages whatsoever. *See* Pl.'s Sur-Reply, ECF No. 86.

[36] *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. 11-cv-1623, 2014 WL 4759945, at *32 (D.D.C. Sept. 25, 2014) (granting summary judgment to defendants on issue of damages because the plaintiff "fails to address [defendant's] argument that it has not provided sufficient evidence of actual damages," and noting that plaintiff would also fail on the merits because it "provides no evidence from which the Court can determine whether it suffered actual damages and, if so, in what amount").

her transfer to the Fourth District was not materially adverse.  However, in arguing that this bars

Sgt. Craig from seeking injunctive relief, the Defendants seemingly ignore the fact that Sgt.

Craig's request for relief is not limited to a request for a return transfer.  Examination of Sgt.

Craig's complaint reveals a general request for injunctive relief from the Defendants' allegedly

unlawful conduct committed in violation of Title VII and the DCHRA.  *See* 2d Am. Compl. at

18.  Thus, in light of the continuing viability of Sgt. Craig's discriminatory hostile work

environment claim, and in the absence of any basis for construing the requested relief solely as a

request for a transfer, the Court will deny the Defendants' motion for summary judgment as to

Sgt. Craig's request for injunctive relief.

Sgt. Craig will ultimately bear the burden of establishing entitlement to the relief she

seeks, but in the absence of any compelling reason to decide the question of appropriate relief

before the District's liability has been determined, the Court will deny the motion and decide the

issue of appropriate injunctive relief, if any, at the remedial stage of the litigation.  *See Davis v.*

*Filip*, 596 F. Supp. 2d 16, 24 (D.D.C. 2009) (deferring consideration of the appropriateness of

plaintiff's requested relief until after liability has been established).

## IV.  CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **GRANTED**

**IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is

separately and contemporaneously issued.

Dated:  November 24, 2014                                         RUDOLPH CONTRERAS
                                                                                       United States District Judge