## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOANNE T. CRAIG, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:    11-cv-1200 (RC) |
| | : | |
| v. | : | Re Document Nos.:   149, 150 |
| | : | |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FEES AND COSTS AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S BILL OF COSTS

## I.  INTRODUCTION

Plaintiff Joanne Craig brought an employment discrimination action against Defendant the District of Columbia under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA").  Following a trial, the jury returned a verdict in favor of Ms. Craig, awarding her $20,000.00 in compensatory damages against the District.  *See* Verdict Form, ECF No. 141. With the judgment now final, Ms. Craig seeks reimbursement of attorney's fees and costs incurred in pursuing her successful claim.  *See* Pl.'s Corr. Mot. Reas. Att'y's Fees, Costs & Exp. at 1–4, ECF No. 149 ("Pl.'s Mot."); *see also* Pl.'s Reply Def.'s Opp'n Mot. Reas. Att'y's Fees & Costs at 1–2, ECF No. 158 ("Pl.'s Reply").  The District opposes Ms. Craig's motion on the ground that the requested award is unreasonable and excessive.  *See* Def.'s Opp'n Pl.'s Corr. Mot. Reas. Att'y's Fees, Costs & Exp. at 1–12, ECF No. 151 ("Def.'s Opp'n").  Upon consideration of the parties' filings, the Court concludes that only some of Ms. Craig's requested fees and costs are reasonable.  In this opinion, the Court will also address the District's

objections to Ms. Craig's bill of costs, and concludes that Ms. Craig has failed to justify certain aspects of her request. Accordingly, the Court will grant in part and deny in part Ms. Craig's motion for fees and costs and will grant in part and deny in part Ms. Craig's bill of costs.

## II.  PROCEDURAL BACKGROUND

Plaintiff Ms. Craig brought this action after being subjected to a series of sexually charged and inappropriate comments over the course of her employment with the District of Columbia's Metropolitan Police Department.[1]  *See* Compl. at 2, ECF No. 1.  After initially proceeding *pro se*, Ms. Craig retained counsel on October 26, 2011.  *See* Cobbina Decl. ¶ 1, ECF No. 149-1.  Thereafter, Ms. Craig filed her second amended complaint and set forth various employment discrimination claims under Title VII and the DCHRA.  *See* 2d Amend. Compl. at 1–19, ECF No. 26.

In response, Defendants moved to dismiss the second amended complaint.  The Court granted the motion as to Ms. Craig's claims for unliquidated damages under the DCHRA and her Title VII claims against Commander Maupin.  *See Craig v. District of Columbia*, 881 F. Supp. 2d 26, 36 (D.D.C. 2012).  The following claims remained: (1) sex discrimination by the District in violation of Title VII and the DCHRA, (2) sex discrimination by Commander Maupin in violation of the DCHRA, (3) retaliation by the District in violation of Title VII and the DCHRA, and (4) retaliation by Commander Maupin in violation of the DCHRA.  *See Craig v. District of Columbia*, 74 F. Supp. 3d 349, 359 (D.D.C. 2014).  After discovery, Defendants moved for

---

[1] Ms. Craig's initial complaint named as defendants the District of Columbia, Chief Cathy L. Lanier, Sgt. Eric T. Levenberry, Sr., Cmdr. Joel R. Maupin, the Metropolitan Police Department, and the Office of the Attorney General.  *See* Compl. at 1.

summary judgment and prevailed on all claims except Ms. Craig's discriminatory hostile work environment claim against the District under Title VII and the DCHRA. *See id.*

In May 2015, the case proceeded to trial. On the third day of trial, the Court declared a mistrial because of a medical emergency that arose with Ms. Craig's counsel. *See* May 20, 2015 Minute Entry. In January 2016, a second trial commenced. *See* Jan. 11, 2016 Minute Entry. Ultimately, Ms. Craig prevailed at trial against the District and the jury awarded her $20,000.00 in damages. *See* Verdict Form.

Ms. Craig's counsel has now filed a motion seeking attorney's fees and costs for 985.30 hours of work in connection with litigating and trying this case through entry of the judgment.[2] Ms. Craig's counsel seeks $559,650.40 in fees based on an hourly rate of $568.00 per hour. *See* Pl.'s Reply Ex. 1 at 24, ECF No. 158-1. Ms. Craig's initial fee motion failed to attach supporting documentation and billing invoices to support the requested fee award. *See* Pl.'s Mot. at 1–5. Thereafter, the District filed its opposition, emphasizing that omission. *See* Def.'s Opp'n at 1, 5–12. Despite Ms. Craig's error, the Court accepted Ms. Craig's reply to the District's opposition, which included the necessary documentation and evidence to support her fee request, and *sua sponte* granted the District leave to file a surreply.[3] *See* Mar. 7, 2016 Minute Order.

---

[2] Although Ms. Craig's motion initially requested an award for 985.15 hours, the billing records she provided in her reply list a total of 985 hours and 18 minutes of work, which amount to 985.30 hours. *Compare* Pl.'s Mot. ¶ 4, *with* Pl.'s Reply Ex. 1 at 24, ECF No. 158-1.

[3] Despite the District's urging to the contrary, the Court will consider the information provided in Ms. Craig's reply. The Court provided the District an opportunity to fully address those filings in a surreply. *See Howard v. Office of the Chief Admin. Officer of the U.S. House of Representatives*, No. 15-5243, 2015 WL 9310036, at *1 (D.C. Cir. Dec. 21, 2015) ("[T]he district court did not abuse its discretion in considering the argument raised in the appellee's reply . . . particularly because appellant was allowed to address this issue in a surreply."); *see also Baloch v. Norton*, 517 F. Supp. 2d 345, 348 n.2 (D.D.C. 2007) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court will either ignore those arguments in resolving the motion or provide the non-movant an opportunity to

Separately, Ms. Craig submitted a bill of costs, seeking payment of $10,802.83[4] in costs for the following: $350.00 in filing fees, $7,567.91 in deposition transcripts and pretrial transcripts, $679.92 in witness fees, and $2,205.00 for summons and subpoena fees. *See* Bill of Costs, ECF. No. 150.

## III.  ANALYSIS

Resolving Ms. Craig's motions requires an analysis of two distinct requests:  her requests for reasonable attorney's fees and costs, and her bill of costs.  The Court will consider each in turn.

### A.  Plaintiff's Motion for Attorney's Fees and Costs

### 1.  Legal Standard

Federal Rule of Civil Procedure 54(d) requires a party seeking attorney's fees and "related nontaxable expenses" to file a motion with the court. Fed. R. Civ. P. 54(d)(2)(A). The motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." *Id*.  It must also state the amount or provide a fair estimate of the award sought. *Id.*; *see also Does I, II, III v. District of Columbia.*, 448 F. Supp. 2d 137, 139–40 (D.D.C. 2006).

Under Title VII, the court is authorized, in its discretion, to award "the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs."  42 U.S.C. § 2000e–5(k).  Generally, "[a] reasonable fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys."  *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)) (internal quotation marks omitted).  In

---

respond to those arguments by granting leave to file a sur-reply." (citing *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003)).

[4] Although Ms. Craig's Bill of Costs requested $10,892.83, the requested line items in fact add up to $10,802.83.  The Court will adjust its award to remove any discrepancy.

awarding appropriate attorney's fees, the court's determination is based on a two-step inquiry. *Does I, II, III*, 448 F. Supp. 2d at 140.

First, the court must determine whether the plaintiff is the prevailing party. *Id.* Plaintiffs are considered prevailing parties, and thus entitled to attorney's fees, "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 53 (D.D.C. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (internal quotation marks and alterations omitted). A litigant need not succeed at every step of the litigation in order to be a prevailing party for the purpose of Title VII; indeed, "a litigant who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Ashraf-Hassan v. Embassy of Fr. in the U.S.*, No. CV 11-805 (JEB), 2016 WL 3014615, at *3 (D.D.C. May 24, 2016) (quoting *Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1335 (D.C. Cir. 1998)) (internal quotation marks omitted).

Second, the court must determine whether the plaintiff's fee request is reasonable. *Does I, II, III*, 448 F. Supp. 2d at 140. In calculating a reasonable fee award, a district court must determine: (1) the reasonable hourly rate (or "lodestar") for the services rendered by the plaintiff's attorney, (2) the number of hours reasonably expended on the litigation, and (3) whether the plaintiff has offered specific evidence demonstrating that this is one of the rare cases where a lodestar enhancement or multiplier is appropriate. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 38 (D.D.C. 2011). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. With respect to the number of hours

expended, the court must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Does I, II, III*, 448 F. Supp. 2d at 140 (quoting *Palmer v. Rice*, No. CIV.A.76-1439, 2005 WL 1662130, at *9 (D.D.C. July 11, 2005)).

Ultimately, the plaintiff bears the burden of establishing both her entitlement to attorney's fees and the reasonableness of the fees she seeks. *See Covington*, 57 F.3d at 1107; *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 895 (D.C. Cir. 2004). A plaintiff can satisfy this burden by submitting evidence of: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. Once the plaintiff has provided such information, a presumption arises that the hours billed are reasonable and the burden shifts to the defendant to rebut the plaintiff's showing. *Id.* at 1109–10.

### 2. Analysis

Although Ms. Craig prevailed and is therefore entitled to reasonable attorney's fees, the District argues that Ms. Craig's requested fees are excessive and lack the requisite specificity to justify the number of hours reasonably expended.[5] *See* Def.'s Opp'n at 1; Mem. P. & A. Supp. Def.'s Sur-Reply at 4–13, ECF No. 163 ("Def.'s Sur-Reply"). Specifically, the District requests that the Court reduce Ms. Craig's counsel's request by eighty percent. Def.'s Sur-Reply at 15.

### a. Reasonableness of Hourly Rate

Ms. Craig's counsel seeks fees at a rate of $568 per hour—which matches the United States Attorneys' Office *Laffey* rate for an attorney with thirty-one or more years of experience. *See* Pl.'s Mot. at 3. To determine whether an hourly rate is reasonable, the court considers three

---

[5] Here, the District does not contest that Ms. Craig is the prevailing party within the meaning of Title VII and DCHRA, *see* Def.'s Opp'n at 1–10, nor does Ms. Craig argue that she merits a lodestar enhancement or multiplier, *see generally* Pl.'s Mot.

sub-elements: "(1) the attorney['s] billing practices, (2) the attorney['s] skill, experience, and reputation and (3) the prevailing market rates in the relevant community." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Covington*, 57 F.3d at 1107) (internal quotation marks omitted).  Here, although the District fails to rebut any of these elements, the Court must still determine whether Ms. Craig satisfied her burden to justify her requested rate. *See Ashraf-Hassan*, 2016 WL 3014615, at *4 ("[B]ecause the burden lies with Plaintiff to justify the rate, the Court must nonetheless determine for itself whether she has done so.").  Specifically, Ms. Craig must "produce satisfactory evidence—in addition to [her] attorney's own affidavits—that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Eley*, 793 F.3d at 105 (emphasis omitted) (quoting *Blum*, 465 U.S. at 895 n.11).

After reviewing the record, the Court finds that Ms. Craig's counsel's requested rate of $568 per hour is consistent with his customary billing practices and supported by counsel's skill, experience, and reputation.  With respect to customary billing practices, Ms. Craig's counsel attests that the rate reflects "[m]y current normal and customary rate I charge clients." Cobbina Decl. ¶ 5.  Additionally, Ms. Craig's counsel's affidavit details his extensive relevant experience. *See id.* ¶¶ 2–4.  Mr. Cobbina has practiced law as a member of the District of Columbia bar since 1981.  *See id.* ¶ 2.  He also asserts that "[o]ver the course of more than 30 years, my practice has been varied but always included the representation of plaintiffs, particularly employees who have become the focus of my practice." *See id.* ¶ 3.  In addition to Ms. Craig's counsel's own declaration, Ms. Craig's counsel attaches several affidavits from other attorneys who practice employment law corroborating his extensive experience and remarking on his favorable reputation. *See, e.g.*, Cashdan Decl. ¶ 11, ECF No. 158-2; Leckar Decl. ¶¶ 5–6, ECF No. 158-3;

Karl Decl. ¶¶ 17, 22, ECF No. 158-4.  Accordingly, counsel's requested rate need not be

adjusted downward to account for any deficiency in skill or experience.

With respect to the prevailing market rate, Ms. Craig seeks reimbursement for attorney's

fees at hourly rates set forth in the standard *Laffey* Matrix published by United States Attorney's

Office for the District of Columbia [hereinafter "USAO Matrix"].  *See* Pl.'s Mot. ¶ 4; Cobbina

Decl. ¶ 5.  Courts in this district customarily apply the USAO Matrix in determining the

"lodestar" reasonable hourly rate for attorney's fees in complex civil litigation.  *See Laffey v. Nw.*

*Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*,

746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds en banc by Save Our*

*Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988).  Indeed, courts in this

district have been reluctant to depart from the USAO Matrix "absent a strong showing that such

a departure is justified by the nature and complexity of the litigation."  *Am. Lands All.*, 525 F.

Supp. 2d at 150.  In this circuit, courts have concluded that Title VII cases are sufficiently

complex to merit *Laffey* rates, and the District does not contest the complexity of Ms. Craig's

Title VII litigation claim.  *See Hansson v. Norton,* 411 F.3d 231, 236 (D.C. Cir. 2005)

(acknowledging that a reasonable hourly rate is guided by the *Laffey* matrix in Title VII actions);

*Makray v. Perez*, No. CV 12-520, 2016 WL 471271, at *9 (D.D.C. Feb. 8, 2016) (declining to

engage in a determination of the "complexity of litigation" because defendant did "not contest

that the plaintiff's successful Title VII gender discrimination lawsuit amount[ed] to complex

federal litigation" (internal quotation marks omitted)).

In advocating in favor of the *Laffey* rate, Ms. Craig's counsel attests that his requested

rate is consistent with other attorney's rates in this market.  Specifically, Ms. Craig's counsel

attaches the affidavits of several other attorneys who claim that the requested rate is consistent

with, or even understates, prevailing market rates for Title VII litigation in Washington, D.C. *See, e.g.*, Cashdan Decl. ¶ 8 ("[My] hourly market rate range for my services is $540-$570.00, and clients . . . are regularly billed in this range."); Leckar Decl. ¶ 4 ("My current hourly billing rate is between $515.00-$575.00 per hour for commercial litigation matters."); Karl Decl. ¶ 12 ("My current hourly rate for employment cases is $700.").  These supporting affidavits also assert that similarly qualified attorneys—those with "50 years" or "30 plus years" experience— who engage in employment discrimination cases customarily charge rates comparable to those proposed in Ms. Craig's counsel's present request.  *See, e.g.*, Cashdan Decl. ¶¶ 3, 8; Leckar Decl. ¶¶ 2–4.  The attached affidavits also confirm a consistent practice of billing at or near *Laffey* matrix rates in Title VII cases in this market.  *See, e.g.*, Cashdan Decl. ¶¶ 8, 10; Leckar Decl. ¶¶ 4, 7; Karl Decl. ¶¶ 12, 22.  Thus, the Court concludes that the attached affidavits and explanations provide adequate justification to employ the USAO Matrix in calculating Ms. Craig's counsel's fee award.  *See Ashraf-Hassan*, 2016 WL 3014615 at *4 (concluding that plaintiff's counsel's affidavit and several other affidavits, including two attorneys not affiliated with plaintiff's counsel, justified awarding a reasonable rate guided by the *Laffey* matrix in a Title VII action); *see also Does I, II, III*, 448 F. Supp. 2d at 139–40 (awarding fees based on the *Laffey* Matrix in a Title VII action).

For its part, the District provides no counter-evidence that would justify departing from the *Laffey* rate.  *See* Def.'s Opp'n at 5–8; Def.'s Sur-Reply at 5–6.  Beyond objecting on the ground that this material was not initially included in Ms. Craig's fee request—a ground the Court has already rejected, *see supra* note 3—the District's surreply provides no legal or evidentiary support for deviating from the *Laffey* rate.  *See* Def.'s Sur-Reply at 5.   Therefore,

the Court will award Ms. Craig's counsel attorney's fees based on his requested rate of $568 per hour.[6]

### b.  Number of Hours Reasonably Expended

The Court turns to the reasonableness of Ms. Craig's counsel's request for fees covering 985.30 hours of work.  An attorney seeking fees must "maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney."  *See Heller*, 832 F. Supp. 2d at 50 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  The District argues that the recorded hours are excessive because Ms. Craig "has fallen short of meeting her burden of proof that the hours she expended were reasonable."  *See* Def.'s Sur-Reply at 6.  Specifically, the District objects to the reasonableness of both the number of hours expended and the specificity, or lack thereof, of counsel's billing invoices.  *Id.* at 9, 13.  In addition to considering the District's argument, the Court will address whether a reduction is warranted due to the limited success of Ms. Craig's claims.

_____

[6] Typically, courts award fees at an hourly rate based on the year in which the work was completed.  *See, e.g.*, *Reed v. District of Columbia*, 134 F. Supp. 3d 122, 136–37 (D.D.C. 2015), *appeal docketed* No. 15-7119 (D.C. Cir. Oct. 28, 2015).  But here, Ms. Craig seeks an award at the rate of $568—the hourly *Laffey* rate for 2015–2016—for all of her counsel's legal work stretching back to 2011.  The District does not raise this issue.  In any event, in order to account for the delay in payment courts have awarded pre-judgment interest (in addition to fees at the respective yearly hourly rate) or fees at the current hourly rate, at least in some contexts.  *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) ("An adjustment for delay in payment [i.e. applying current rates] is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee.").  *But see McAllister v. District of Columbia*, 53 F. Supp. 3d 55, 58 n.2 (D.D.C. 2014) (explaining that "[i]n general, compensation for a delay in payment may be more pertinent in civil rights matters given the lengthy duration of most civil rights litigation, as compared to the relatively transient nature of IDEA litigation").  Here, because the District has not raised the issue, the Court will award fees at the current *Laffey* rate for all past work.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) (Compensation for a delay in payment "is generally made either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." (internal quotation marks and citation omitted)); *see also West*, 717 F.3d at 1034.

### i. The Reasonableness and Detail of Expended Hours

The District submits a list of objectionable entries from Ms. Craig's counsel's invoice and argues that certain recorded entries were not reasonably expended or adequately detailed. *See* Def.'s Sur-Reply at 6–13. In response, Ms. Craig attests that the work reflected in the time entries was reasonable and necessary for the prosecution of this case. *See* Pl.'s Resp. Def.'s Sur-Reply Filed Opp'n Pl.'s Mot. Att'y Fees, Costs, & Exp. at 2–8, ECF No. 165 ("Pl.'s Sur-Surreply"). Regarding the contested entries, the district observes that because "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely," the prevailing party's counsel "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Castle v. Bentsen*, 872 F. Supp. 1062, 1066 (D.D.C. 1995) (quoting *Hensley*, 461 U.S. at 434). To satisfy the burden of justifying a reasonable fee, Ms. Craig's "supporting documentation must be of sufficient detail and probative value to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (internal quotation marks and alterations omitted) (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per curiam)). Satisfactory documentation consists of "contemporaneous time records of hours worked . . . plus a detailed description of the subject matter of the work with supporting documents, if any." *Ashraf-Hassan*, 2016 WL 3014615, at *5 (quoting *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (per curiam)). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. A fixed, percentage reduction may be warranted when a large number of billing entries suffer from one or more deficiencies. *Role Models Am., Inc.*, 353 F.3d at 973.

The District first objects to an award of fees covering the time Ms. Craig's counsel spent preparing for the first trial, which ended in a mistrial. *See* Def.'s Sur-Reply at 8. Specifically, the District argues that it should not be "penalized" for Ms. Craig's counsel's illness, which necessitated the mistrial. *Id.* The D.C. Circuit has not specifically addressed whether a plaintiff who prevails after multiple trials should be awarded the reasonable fees incurred in preparing for each trial. However, several other circuits allow an award of attorney fees for multiple trials, so long as "the plaintiff's unreasonable behavior did not cause the need for multiple proceedings and as long as counsel's time was reasonably expended." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 826 (6th Cir. 2013) (quoting *Abner v. Kan. City S. Ry. Co.*, 541 F.3d 372, 381–82 (5th Cir. 2008)); *accord Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1177 (10th Cir. 2010); *O'Rourke v. City of Providence*, 235 F.3d 713, 737 (1st Cir. 2001); *Gierlinger v. Gleason*, 160 F.3d 858, 877–78 (2d Cir. 1998); *Jaffee v. Redmond*, 142 F.3d 409, 416 (7th Cir. 1998). These circuits have eschewed a bright-line, categorical rule declining to award fees for multiple trials, concluding, instead, that "[t]he question of whether a party 'prevailed' and whether a fee award is 'reasonable' is not one to parse too thinly . . . [based on] the number of trials required to reach a result." *Waldo*, 726 F.3d at 826 (quoting *Abner*, 541 F.3d at 382). This principle includes additional trials necessitated by a mistrial: "where a party is not at fault for causing mistrial, an award of attorneys' fees may be merited." *Abner*, 541 F.3d at 381 (mistrial declared where jury was unable to reach a verdict in first trial); *cf. Gierlinger*, 160 F.3d at 878 (affirming fees awarded by the district court after *sua sponte* declaring a mistrial due, in part, to publicity, and even though the district court concluded that "plaintiff's attorney is not blameless for [the] mistrial"). The mere fact that two trials were necessary to obtain a favorable result is not dispositive, although the court's reasonableness analysis should, of course, "take into account

and discount for repetitive work, as may occur when there are two trials." *Abner*, 541 F.3d at

383. Depending on the time that has elapsed between trials in any particular case, it may be

reasonable to award costs for some duplication of efforts. *See Gierlinger*, 160 F.3d at 878

(noting that there was a two year gap between trials—due to a favorable appeal—and explaining

that "no competent attorney would embark on a retrial without some preparation"). Ultimately,

whether and to what extent to award fees for multiple trials should be a case-specific inquiry.

In this case, the need for a second trial resulted from an unforeseen medical emergency,

and the Court therefore declines to categorically omit the fees incurred in preparation for the first

trial. The Court is not insensitive to the District's argument that the costs incurred preparing for

two trials should not be shifted to the District and, ultimately, the taxpayers. At the same time,

however, the Court does not believe that counsel's medical emergency rises to the level of

unreasonable behavior or misconduct, or that the Court can apportion fault for the mistrial to Ms.

Craig's counsel because of his medical needs. The District's concern that the mistrial led to

duplicated efforts or repetitive work is a valid one. But those overbilling concerns will be

considered—and can be accommodated—in assessing whether Ms. Craig's counsel's hours were

reasonably expended. *See Abner*, 541 F.3d at 383.

The question remains whether Ms. Craig's counsel's recorded hours were reasonably

expended in pursuit of her successful claim. Here, the District calls for an eighty percent

reduction, arguing that the hours expended are unreasonable and that Ms. Craig's counsel's

billing records contain multiple deficiencies. *See* Def.'s Sur-Reply at 6–13. The Court will

examine whether Ms. Craig's counsel provided sufficiently detailed entries and whether the

hours were reasonably expended. In addition, when analyzing those records and the time

expended on individual tasks, the Court recognizes that "[a] pleading-by-pleading examination

of the copious files in this case would be unnecessarily burdensome." *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980). Thus, the Court has discretion to "simply reduc[e] the proposed lodestar fee by a reasonable amount without performing an item-by-item accounting." *Id.* (internal quotation marks omitted).

First, the District objects to both the hours expended and the specificity of the billing records regarding Ms. Craig's counsel's trial preparations. *See* Def.'s Sur-Reply at 8. Those billing entries only vaguely describe "preparing for trial," and provide no detail or specificity from which the Court could ascertain whether the preparations were reasonably expended or, instead, were unnecessarily duplicative. *See* Pl.'s Reply Ex. 1 at 21–24; *see also Cobell v. Norton*, 407 F. Supp. 2d 140, 158 (D.D.C. 2005) (holding that entries such as "prepare for trial," "further trial preparation and document review," "trial preparation," and "preparation for trial" "are so vaguely generic that the Court can not determine with certainty whether the activities they purport to describe were necessary and reasonable"); *A.C. ex rel. Clark v. District of Columbia*, 674 F. Supp. 2d 149, 158–59 (D.D.C. 2009) (holding that such entries as "preparation for hearing" and "preparation for telephone conference" lack sufficient detail to enable the Court to ascertain that the time spent on such activity was reasonably expended). The inadequate detail does little to satisfy Ms. Craig's burden or rebut the District's position that the recorded entries are "insufficient to support entitlement to the requested fees, and is excessive billing." *See* Def.'s Sur-Reply at 8. To counter the District's claim, Ms. Craig's counsel unpersuasively supplements the already vague entries with yet another vague, conclusory assertion. *See* Pl.'s Sur-Surreply at 4–5 ("The preparation leading up to trial in May, 2015 and January, 2016 were both reasonable and necessary for the prosecution of the case."). Ultimately, Ms. Craig's counsel's sparsely detailed entries do not adequately establish full entitlement to the requested

fees.  *See Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986) ("Fee applicants bear the heavy obligation to present well-documented claims.").

      The District also objects to the specificity provided for many other billing entries and, after examining those entries, the Court agrees that Ms. Craig's counsel in many instances has not provided the sort of detailed and standardized time records necessary in order for the Court to determine whether those hours were reasonably expended.  For example, many entries perfunctorily state that counsel "e-mailed" or sent an "email to" someone, had a "phone discussion w/" someone, or "reviewed and responded to" an e-mail or a document.  *See* Pl.'s Reply Ex. 1 at 1–24.  These descriptions are insufficiently detailed.  *See In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (reducing the fee award "where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed"); *In re Olson*, 884 F.2d at 1428 (reducing fees when "multitudinous billing entries . . . wholly fail to state or to make any reference to the subject discussed at a conference, meeting or telephone conference").  To rebut the District's objection, Ms. Craig's counsel replies that "the enumerated items were largely meetings with Sgt. Craig, witnesses and suppliers such as the court reporter and process servers . . . and [were] reasonable and necessary for the prosecution of this case."  Pl.'s 2d Sur-Surreply at 4.  Yet, Ms. Craig's response does not provide any additional detail from which the Court could assess the reasonableness of the hours expended.  The added, conclusory assertion does not allow the Court to conduct a meaningful review of whether these entries are unnecessary, duplicative, or excessive.  *See Hensley*, 461 U.S. at 434.

      The District further challenges Ms. Craig's counsel's recorded hours for the preparation of several filings.  *See* Def.'s Sur-Reply at 6–13.  The District argues that the hours expended on preparing the amended complaints, discovery responses, joint pretrial statement, deposition

notices, and motions are excessive and unreasonable. *See id*. Although the Court will not canvass all of these objections, *see Copeland*, 641 F.2d at 903 (noting that a court may avoid "[a] pleading-by-pleading examination"), the Court will discuss the District's challenges to the entries for Ms. Craig's amended complaints and joint pretrial statement as illustrative of the District's concerns.

For example, with respect to the amended complaints, Ms. Craig's counsel requests an award for six and a half hours expended on the Second Amended Complaint, and a substantial number of hours working on the prior Amended Complaint. The Court has reviewed the record and finds that the two documents are substantially similar, and contain minimal changes. *Compare* 1st Am. Compl., ECF No. 16, *with* 2d Am. Compl. (adding only minimal details, including two new factual paragraphs [¶¶ 54, 56] and splitting the Title VII and DCHRA claims into two separate counts). To rebut the District's challenge that the requested award is "exorbitant," Def.'s Sur-Reply at 7, Ms. Craig's counsel replies that the hours expended were reasonable and necessary to combat the "barrage of defendants' motions." *See* Pl.'s Sur-Surreply at 3–4. But she does not explain how the barrage of motions led to only minimal changes for the Second Amended Complaint—and why those minimal changes took over six hours to implement. After review of the record, the Court agrees that the number of hours Ms. Craig's counsel devoted to work on the amended complaints and opposition to the District's motions appear excessive. *Cf. Falica v. Advance Tenant Servs., Inc.*, 384 F. Supp. 2d 75, 80 (D.D.C. 2005) (reducing hours expended preparing the amended complaint because it "would have been unnecessary had a better pleaded complaint been initially filed").

Additionally, the District seeks to exclude Ms. Craig's counsel's hours completing and filing the joint pretrial statement. *See* Def.'s Sur-Reply at 11–12. Specifically, the District urges

that the requested amount of $22,492.80 to cover counsel's review of documents for and drafting of the joint pretrial statement is "unreasonable on its face." *See id.* When reviewing the fees charged for preparing and filing the above mentioned document, it is readily apparent that the requested document preparation fee is excessive. Most notably, in one instance, for entries dated April 1, 2015, Ms. Craig's counsel recorded approximately twelve hours to complete and file the joint pretrial statement. *See* Pl.'s Reply Ex. 1 at 19 (entries for April 1, 2015). The Court's review of Ms. Craig's portion of the pretrial statement reveals that no complex issues were addressed in that filing and that the list of witnesses and exhibits seems entirely routine. To rebut the District's challenge, Ms. Craig's counsel's supplemental explanation provides no justification for why the substantial number of hours expended hours are reasonable. *See* Pl.'s Sur-Surreply at 6–7. In fact, Ms. Craig's counsel attests that the District is responsible for failing to cooperate and produce its portion of the joint pretrial statement. *See id.* The Court need not referee the failure of both parties to work on the routine task of preparing a joint pretrial statement. After reviewing the docket, and both parties' responses, the Court finds that Ms. Craig's counsel, who bears the burden to show his request is reasonable, has provided no more than a conclusory explanation for why such a large number of hours were necessary to prepare and file the pretrial statement. Without that information, the Court is unable to conduct a meaningful review of whether those hours are unnecessary, duplicative, or excessive. *See Hensley*, 461 U.S. at 434.

The Court is ultimately guided by the principle that, "[a] fixed reduction is appropriate given the large number of entries that suffer from one or more of the deficiencies." *Role Models Am., Inc.*, 353 F.3d at 973; *see, e.g.*, *In re Meese,* 907 F.2d 1192, 1204 (D.C. Cir. 1990) (reducing the fee award by ten percent because of numerous instances in which the billing entries

were not adequately documented); *Kennecott Corp.*, 804 F.2d at 767 (reducing the fee award by

fifteen percent because of poor documentation and insufficient contemporaneous time records);

*Williams v. Johnson*, No. CV 06-2076, 2016 WL 1257831, at *13–14 (D.D.C. Mar. 30, 2016)

(reducing fee award by fifty percent because counsel provided identical phrasing of billing

entries and no specificity for how the hours were expended).  Based on the deficiencies detailed

above, the Court believes it is appropriate to reduce Ms. Craig's total award in this case by

twenty percent to account for the lack of detail in the billing records, which leaves the Court

unable to meaningfully determine whether the expended hours were reasonable.

### ii.  Fees on Fees

Ms. Craig's counsel also requests an additional award of fifteen percent of his fee request

as compensation for the time and efforts reasonably expended in seeking fees.  *See* Pl.'s Mot. ¶

4.  That request would amount to a fees-on-fees award of $83,947.56.  While the "time

reasonably devoted to obtaining attorneys' fees in the context of litigation where the court must

be petitioned for such an award is itself subject to an award of fees," *Cobell v. Norton*, 231 F.

Supp. 2d 295, 306–07 (D.D.C. 2002) (quoting *Envtl. Def. Fund v. EPA*, 672 F.2d 42, 62 (D.C.

Cir. 1982)), an award of over $80,000 for the preparation of this routine fee petition would be

excessive.  In addition to questioning the size of the request, the Court notes that Ms. Craig's

counsel already included billing entries as part of his fee request, and as reflected in the attached

invoice, for some of the hours he expended preparing and drafting his motion for attorney's fees

and costs.  *See* Pl.'s Reply Ex. 1 at 24 (entries for Jan. 31, 2016; Feb. 2, 2016; and Feb. 3, 2016).

In light of counsel's duplicative entries, and the size of the request, the Court will deny Ms.

Craig's request for a fifteen percent award.  At the same time, the Court acknowledges that the

bulk of counsel's work on the fee petition necessarily post-dated February 3, given his later reply

and surreply filed on March 1, 2016 and April 6, 2016, respectively. *See generally* Pl.'s Reply;

Pl.'s Sur-Surreply. To account for this additional work, the Court will award Ms. Craig's

counsel an additional 8 hours, which the Court believes is a reasonable number of hours given

the length and substance of those later filings. *Cf. Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254,

1259 (D.C. Cir. 1993) (limiting the hours requested for a "boilerplate" fee motion that "spans all

of two pages" to "at most eight hours"); *Pub. Emps. for Envtl. Responsibility v. U.S. Int'l*

*Boundary & Water Comm'n*, 968 F. Supp. 2d 85, 88 (D.D.C. 2013) (concluding that, if a

separate motion for fees on fees would require "any more work . . . to file a reply memorandum,

additional fees shall be limited to 8 hours' worth of compensation").

### iii. Reduction in Fees for Unsuccessful Claims

The product of the reasonable hours expended and a reasonable rate does not end the

inquiry. There remain other considerations that may lead the Court to adjust the fee downward,

including the reduction for unsuccessful claims. *See Hensley*, 461 U.S. at 434–36. Here, the

District does not address Ms. Craig's level of success, but the Court will nevertheless consider

whether to deny or reduce the fee award. Specifically, a court may reduce an attorney's fee

award to account for limited success on the merits. *See id.* at 436 (explaining that, when

plaintiffs prevail on only some of their claims, "a fee award based on the [total] claimed hours"

would be "excessive"). Because Ms. Craig prevailed on only one claim of the numerous claims

initially pressed in her complaint, reducing her fee award is justified. *See, e.g.*, *Medina v.*

*District of Columbia*, 864 F. Supp. 2d 13, 22 (D.D.C. 2012) (reducing fee award with respect to

unsuccessful claims because plaintiff only prevailed on one of the initial ten counts pressed).

When reducing fees for limited degree of success, the Court may reduce fees in a number

of ways, such as by eliminating specific hours or reducing the award as a whole. *See Hensley*,

461 U.S. at 436–37 ("There is no precise rule or formula for making [fee] determinations. . . . The court necessarily has discretion in making this equitable judgment."). When determining how to reduce fee awards for partially successful plaintiffs, the court must analyze the relationships between the successful and unsuccessful claims. *See id.* at 434–35. If the plaintiff presented "distinctly different claims for relief that are based on different facts and legal theories," then "counsel's work on one claim will be unrelated to his work on another claim." *Id.* In cases with such "distinctly different claims," "no fee may be awarded for services on [any] unsuccessful claim[s]." *Id.* But if the plaintiff's claims "involve a common core of facts," or are based on "related legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. In cases with interrelated claims, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

After a review of the record, the Court finds that Ms. Craig's claims derive from a "common core of facts," *id.*, and, hence, that the Court cannot easily divide, claim-by-claim, her counsel's hours expended. Specifically, each of Ms. Craig's claims derived from her allegations of employment discrimination against her employer and former supervisor. *See* Compl. at 1–2. Accordingly, because Ms. Craig's claims were based on interrelated facts, the Court will not reduce her counsel's hours expended on a claim-by-claim basis, but will instead partially reduce her fee award. *See Hensley*, 461 U.S. at 434–37.

While Ms. Craig ultimately prevailed in this lawsuit, Ms. Craig's success was limited in certain respects. She secured a favorable verdict on only two of the claims initially pressed in her complaint (the Title VII and the DCHRA discrimination claims)—and against only one

defendant: the District.  *Compare* Verdict Form, *with* 2d Am. Compl. ¶¶ 59–66.  In the course of

the litigation, defendants prevailed in part at the motion to dismiss and motion for summary

judgment stages.  In response to the defendants' motions to dismiss, the Court dismissed Ms.

Craig's claims against Commander Maupin, because an individual may not be held liable under

Title VII, but Ms. Craig's discrimination and retaliation claims and her claims against

Commander Maupin under the DCHRA survived.  *See Craig*, 881 F. Supp. 2d at 31–36.  At

summary judgment, the Court entered judgment for the defendants on Ms. Craig's Title VII and

DCHRA retaliation claims because Ms. Craig failed to provide a factual basis for concluding that

her transfer constituted a materially adverse action, and the Court also concluded that Ms. Craig

could proceed on her discrimination claims only against the District.  *See Craig,* 74 F. Supp. 3d

at 375–78, 379–80.

Therefore, two of the counts asserted in Ms. Craig's complaint were resolved in

defendants' favor, and unfavorably for Ms. Craig, at summary judgment.  Yet, the judgment

entered for defendants on Ms. Craig's retaliation claims does not take away from the fact that she

prevailed on her hostile work environment claims.   And it is clear, going back to Ms. Craig's

initial EEOC complaint, that the hostile work environment claim premised on Sergeant

Levenberry's conduct was Ms. Craig's central claim.  Moreover, while the claims against

Commander Maupin were resolved in defendants' favor at the motion to dismiss and summary

judgment stages, those claims were premised on the same conduct as the claims against the

District that survived for trial.  The dismissal of those defendants did not materially reduce the

damages or remedies Ms. Craig was able to seek, and that she ultimately obtained, at trial.  The

Court also recognizes that this case involved overlapping factual issues and related legal

theories; in light of this overlap, time that Ms. Craig's counsel spent on the unsuccessful

retaliation claims undoubtedly contributed to the litigation of her hostile work environment claims. *See Hensley*, 461 U.S. at 435 n.11 (disapproving of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" (internal quotation marks omitted) (quoting the district court's opinion)).

In light of this history, the Court finds that a modest reduction of thirty percent is warranted. Because Ms. Craig prevailed on all of her claims that *did* go to trial, however, the Court will only reduce the time spent prior to the Court's summary judgment opinion.[7] A thirty percent reduction of the pre-summary judgment hours adequately accounts for Ms. Craig's unsuccessful retaliation claims while also reflecting "the significance of the overall relief obtained by [Ms. Craig] in relation to the hours reasonably expended on the litigation." *Id.* at 435.

### 3. Costs

Ms. Craig also requests reimbursement for costs associated with the litigation of her claims. *See* Pl.'s Mot. ¶ 4. Specifically, Ms. Craig requests an award of $1,995.55 in expenses, in addition to the legal fees incurred. *See id.* "An award of costs for copying, faxing and postage . . . are customarily included in fees awards." *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 28 n.7 (D.D.C. 2004); *see also Sexcius v. District of Columbia*, 839 F. Supp. 919, 927 (D.D.C. 1993) (noting that "[r]easonable photocopying, postage, long distance telephone, messenger, and transportation and parking costs are customarily considered part of a reasonable 'attorney's fee'"); *Bailey v. District of Columbia*, 839 F. Supp. 888, 891–92 (D.D.C. 1993). Such costs are only shifted to the defendant provided that they are reasonable. *See Bailey*, 839 F.

---

[7] The Court's percentage reduction will be applied to the time spent prior to the Court's November 24, 2014 summary judgment memorandum opinion. As a result, the Court will not reduce the hours expended to obtain the favorable outcome at trial.

Supp. at 892.  Importantly, the costs recoverable as part of an attorneys' fee award consist only of "related *nontaxable* expenses."  Fed. R. Civ. P. 54(d)(2)(A) (emphasis added).

Here, neither Ms. Craig's counsel's reply nor his sur-surreply provide any explanation, receipts, or documentation to justify the reasonableness of the requested costs.  *See Castle*, 872 F. Supp. at 1068 ("[T]he Court shall not award any costs where the documentation is inadequate."); *see also Harvey*, 951 F. Supp. 2d at 70 ("[T]he Court will not compensate unexplained fees. . .").  Without any supporting documentation or explanation, the Court cannot determine whether the costs incurred are reasonable or necessary.   Accordingly, the Court will not award litigation costs.[8]

#### 4. Ms. Craig's Award for Attorney's Fees and Costs

The Court calculates Ms. Craig's total attorney's fee award by first adopting the *Laffey* rate of $568.00 per hour.  To calculate the number of reasonable, compensable hours, the Court will divide Ms. Craig's counsel's 985.3 hours into the hours expended for work up to and including summary judgment (608 hours of work), and the hours expended preparing for and conducting the trial (377.3 hours).  The Court then reduces each category by twenty percent for deficiencies in the billing records' detail and for excessive hours, yielding 486.4 and 301.84 hours, respectively.  The hours expended up to and including summary judgment are further

---

[8] The District's opposition urged the Court to disregard the cost request because no explanations, receipts, or documentation were provided.  *See* Def.'s Opp'n at 11.  In response, beyond his failure to properly support her request with documentation, counsel failed to address this argument at all.  *See* Pl.'s Reply ¶ 2.  Accordingly, counsel's request fails for the independent reason that he has conceded it.  *See Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").  Counsel also improperly submitted additional taxable costs in his reply, which the Court addresses below.  *See* Pl.'s Reply ¶ 2.

reduced by thirty percent to account for the degree of Ms. Craig's success, yielding 340.48 hours. Adding those hours to the hours reasonably expended on trial (301.84), and an additional 8 hours to account for Ms. Craig's fee petition, the Court arrives at a total of 650.32 hours. At a rate of $568.00 per hour, those hours produce a total fee award of $369,381.76.

### B. Bill of Costs

### 1. Legal Standard

The Federal Rules of Civil Procedure provide that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Under federal statute, taxable costs include, among other things:

(1) Fees of the Clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses . . . .

28 U.S.C. § 1920. This district's local rules provide additional guidance, and set forth a more specific list of costs that the Clerk "shall tax" if "requested to do so in the bill of costs," which include:

(2) Costs of service of summons and complaint;

. . .

(6) Costs, at the reporter's standard rate, of the original and one copy of any deposition noticed by the prevailing party, and of one copy of any deposition noticed by any other party, if the deposition was used on the record, at a hearing or trial;

(7) Costs, at the reporter's standard rate, of the original and one copy of the reporter's transcript of a hearing or trial if the transcript: (i) is alleged by the prevailing party to have been necessary for the determination of an appeal within the meaning of Fed. R. App. P. 39(e), or (ii) was required by the court to be transcribed;

. . .

24

(11) Costs of service of a subpoena on a witness who testified at a deposition, hearing or trial . . . .

D.D.C. Local Civ. R. 54.1(d).

The Supreme Court has noted that "liability for costs is a normal incident of defeat." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). Although costs are generally awarded as a matter of course, the district court has discretion in allowing, disallowing, or apportioning costs. *See Moore v. Nat'l Ass'n of Secs. Dealers, Inc.*, 762 F.2d 1093, 1107 (D.C. Cir. 1985); *see also Osseiran v. Int'l Fin. Corp.*, 68 F. Supp. 3d 152, 155 (D.D.C. 2014) (Although "Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs . . . the word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." (alteration in original) (quoting *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013))). However, "a court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so." *Baez v. U.S. Dep't of Justice*, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc) (per curiam). In accordance with the presumption that costs are awarded to the prevailing party, "federal courts have placed on the unsuccessful parties some burden of showing circumstances sufficient to overcome the presumption favoring the prevailing party." *Id.*

## 2. Analysis

### a. Deposition Transcripts of Non-Testifying Witnesses

The District first challenges the taxation of transcripts from the depositions of Officer Battle, Officer Garner, Officer Govan, Assistant Chief Durham, and Lt. Ashley Rosenthal. *See* Def.'s Opp'n Pl.'s Bill of Costs ¶ 2, ECF No. 156 ("Def.'s Opp'n BOC"). Deposition transcripts are taxable if they are "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). This district's local rules provide that the costs "of one original and one copy of any deposition

noticed by the prevailing party, and of one copy of any deposition noticed by any other party," are taxable "if the deposition was used on the record, at a hearing or trial." D.D.C. Local Civ. R. 54.1(d)(6). The District argues that Local Civil Rule 54.1 limits the costs taxable under section 1920, and therefore that Ms. Craig cannot recover the cost of these five depositions because they were not used on the record, at a hearing, or during trial. *See* Def.'s Opp'n BOC ¶ 2. The necessity of obtaining a deposition transcript is ascertained "as of the time the deposition was taken rather than at the time of the trial." *Johnson v. Holway*, 522 F. Supp. 2d 12, 18 (D.D.C. 2007); *see also Sykes v. Napolitano*, 755 F. Supp. 2d 118, 120 (D.D.C. 2010) ("If transcripts are 'necessarily obtained for use in the case,' they are authorized under both statute and the district court's local rules, thereby attaching the presumption favoring their award." (quoting D.D.C. Local Civ. R. 54.1(d)(6))); *accord Youssef v. FBI*, 762 F. Supp. 2d 76, 86 (D.D.C. 2011). Even if Ms. Craig did not ultimately use the depositions at trial, that fact is not singularly determinative. *See Sykes*, 755 F. Supp. at 121. For example, even the use of a transcript in supporting or defending a motion for summary judgment or in preparing for trial may make that transcript eligible for taxation. *See, e.g.*, *Sun Ship, Inc. v. Lehman,* 655 F.2d 1311, 1318 n.49 (D.C. Cir. 1981).

The Court finds that Ms. Craig has failed to rebut the District's claim that the challenged depositions were not "necessarily obtained" for use in this case. *See Mann v. Wash. Metro. Area Transit Auth.*, No. 13-CV-00120, 2016 WL 2757363, at *2 (D.D.C. May 12, 2016) (placing burden on party seeking costs to demonstrate deposition transcripts were "necessarily obtained"). Ms. Craig completely disregards the District's objections and provides no supporting explanation

to demonstrate the necessity of these transcripts.[9]  *See* Pl.'s Reply ¶ 2.  These individuals did not

testify at either trial[10] and Ms. Craig's reply fails to explain in any way the roles of these

individuals in the case or why their deposition transcripts were necessary in order to prepare for

future depositions, briefing at summary judgment, or for trial.  *See id.*  In light of Ms. Craig's

counsel's failure to provide some explanation about the necessity of these transcripts and the fact

that these witnesses did not testify at trial, the deposition transcripts will not be taxed.[11]

### b.  Special Features and Shipping and Handling Related to Deposition Transcripts

The District next challenges the taxation of costs for videotaped depositions and the

delivery and handling fees for deposition transcripts.  *See* Def.'s Opp'n BOC ¶ 2.  Ms. Craig

seeks to recover the expenses for the videotaping of the following depositions:  Sgt. Darlene

Bratcher-Johnson, Officer Laverne Battle, Officer Darrell Garner, Sgt. Denise Griffith, Officer

Denise Govan, Assistant Chief Alfred Durham, Lt. Patricia Janifer, Lt. Darlene Terry-Weeks, Lt.

Ashley Rosenthal, Sgt. Eric Levenberry, and Commander Joel Maupin.  *See id.*  For these costs

to be recoverable, Ms. Craig must demonstrate that the videotape depositions were "necessary or

reasonable under the circumstances, or that any use was made of the videotape[s] at trial or in

---

[9] Because Ms. Craig failed to respond to this argument, the Court also finds the District's argument is conceded.  *See Day*, 191 F. Supp. 2d at 159.

[10] The Court is aware that one of the disputed witnesses, Chief Alfred Durham, was named in the joint pretrial statement as a defense witness.  *See* Joint Pretrial Statement at 9, ECF No. 98.  Durham was not called to testify, however.  Although it may have been possible for Ms. Craig's counsel to claim that Chief Durham's transcript was necessary in order to prepare for his potential cross-examination, counsel fails to make any argument in his reply as to why the deposition transcript was necessary. In addition, the Court notes that Chief Durham's deposition transcript was ordered on December 12, 2013, *see* Bill of Costs Ex. 2, ECF No. 150-2, well before the Joint Pretrial Statement was filed on April 1, 2015, *see* Joint Pretrial Statement.

[11] The bill of costs will be reduced by $1,372.10 to omit the deposition transcript costs as follows: Officer Battle ($138.60), Officer Garner ($103.95), Officer Govan ($336.75), Assistant Chief Durham ($445.45), and Lt. Ashley Rosenthal ($347.35).

motions." *Bell v. Gonzales*, No. CIV. A. 03-163, 2006 WL 6000485, at *2 (D.D.C. Sept. 27,

2006) (emphasis omitted).  Here, Ms. Craig fails to provide any reason for videotaping the

depositions or any explanation for why counsel required or anticipated the use of the videotapes

at trial or in future motions.  *See* Pl.'s Reply ¶ 2.

The District also argues that Ms. Craig should not be reimbursed for shipping and

handling fees for deposition transcripts.  *See* Def.'s Opp'n BOC ¶ 2.  Indeed, Ms. Craig's

assertion that the delivery costs are taxable is incorrect.  *See Bell*, 2006 WL 6000485, at *2

("[C]osts associated with delivery, shipping, and handling are not recoverable because they are

considered part of the cost of operating a business."); *see also Johnson v. Holway*, 522 F. Supp.

2d 12, 19 (D.D.C. 2007) (declining to tax deposition transcript delivery costs because

"[a]dministrative fees, like delivery costs, are . . . considered ordinary business expenses that

cannot be recovered as costs" (internal quotations marks omitted)).  Here, Ms. Craig provides no

explanation or reasoning to support her assertion that these costs are recoverable.  *See* Pl.'s

Reply ¶ 2.  Accordingly, the shipping and handling fees shall be reduced from the bill of costs.[12]

### c.  Costs for Service of Subpoenas and Witness Fees

Additionally, the District challenges the request for costs associated with the service of

subpoenas and witness fees.  *See* Def.'s Opp'n BOC ¶¶ 3–4.  Specifically, the District contends

that it should not be held responsible for the costs associated with witnesses who did not appear

at a deposition, hearing, or trial, or the duplicative costs associated with the mistrial.  *Id.*

"Although neither the Local Rules nor the United States Code mandates that the subpoenaed

witnesses specifically testify at trial in order to justify reimbursement, when the subpoena is

---

[12] The Court will further reduce the transcript costs sought by $2,475.05 for these costs (which also include a finance charge on overdue balances, which the District should not be required to pay).

issued specifically for trial and the witness does not testify, the Court is within its authority to

deny such recovery." *Medina v. District of Columbia*, 864 F. Supp. 2d 13, 23 (D.D.C. 2012)

(emphasis and footnote omitted).  Witness fees are expressly authorized as taxable costs, *see* 28

U.S.C. § 1920(3), although the Court again has discretion to limit witness fees to "the days the

witness necessarily and reasonably attended the trial as a witness."  *Medina*, 864 F. Supp. 2d at

23 (internal quotation marks omitted) (quoting *Belfiore v. U.S. Merit Sys. Prot. Bd.*, No. 84–

CIV–3877, 1987 WL 10234, at *2 (D.D.C. Apr. 23, 1987)).

> Here, the District provides specific examples of witnesses who were subpoenaed but did

not testify at the first trial, and whose service and witness fees Ms. Craig seeks again for the

second trial—at which those witnesses did testify.  *See* Def.'s Opp'n BOC ¶¶ 3–5.  In response,

Ms. Craig again provides no explanation for why the duplicated costs for subpoenas and witness

fees were necessary and reasonable.  *See* Pl.'s Reply ¶ 2.  Accordingly, the Court will disallow

both the claimed subpoena and witness fees because Ms. Craig fails to respond or justify the

reasonableness for the duplicated costs.[13]  *See Medina*, 864 F. Supp. at 23 (disallowing costs

when moving party did not "indicate whether and under what circumstances the individuals

listed . . . attended the trial").

---

[13] The Court will reduce the bill of costs by $1,288.88 ($1,065.00 in subpoena fees and $223.88 in witness fees from the first trial) for the following witnesses: Lt. Patricia Janifer, Officer Tonia Jones, Commander Joel Maupin, Lisa Tapp, and Sgt. Bratcher-Johnson.  This Court will not reduce the bill of costs for subpoena and witness fees for the first trial for witnesses Denise Griffith and Eric Levenberry, because these witnesses testified prior to the declaration of the mistrial.  *See* May 18, 2015 Minute Entry.  In addition, the Court notes that Ms. Craig's counsel includes as exhibits to his bill of costs several additional subpoena-related fees which he does not actually seek to be taxed in his bill of costs.  Those two entries are: a $150.00 fee for a stakeout during an attempt to serve Commander Maupin, *see* ECF No. 150-21, and a $75.00 fee for a stakeout during an attempt to serve Officer Jones, *see* ECF No. 150-20.  Because Ms. Craig's counsel does not seek these fees, they are also omitted from the Court's recalculated award.

### d.  Pretrial and Trial Transcripts

The District next challenges Ms. Craig's submitted costs for copies of transcripts from the pretrial conference on May 4, 2015 and first day of the mistrial on May 18, 2015.  *See* Def.'s Opp'n BOC ¶ 5.  Pursuant to 28 U.S.C. § 1920(2), a party may recover "fees for printed or electronically recorded transcripts necessarily obtained for use in the case."  Our local rules also allow the taxed costs "of the original and one copy of the reporter's transcript of a hearing or trial if the transcript: (i) is alleged by the prevailing party to have been necessary for the determination of an appeal within the meaning of Fed. R. App. P. 39(e), or (ii) was required by the court to be transcribed."  D.D.C. Local Civ. R. 54.1(d)(7).

Here, the District asserts that the Court did not require the transcripts to be printed nor were the transcripts necessary for appeal.  *See* Def.'s Opp'n BOC ¶ 5.  In his reply, Ms. Craig's counsel makes no argument to rebut the District's contention about the necessity or required use of these transcripts.  *See Youssef*, 762 F. Supp. 2d at 88 (denying costs when party failed to establish that it was necessary to use the transcripts).  Accordingly, the Court will deny Ms. Craig's request for costs for the pretrial hearing transcript and trial transcript.[14]

### e.  Supplemental Submission of Costs

Finally, instead of responding to the District's objections, Ms. Craig submitted additional costs of $2,794.40 with no corresponding explanation as to why these costs were initially omitted from her bill of costs.  *See* Pl.'s Reply ¶ 2.  Ms. Craig should have included these costs in the initial request as each of the supplemental invoices predate the submitted bill of costs.  *See* Pl.'s Reply Ex. 5, at 1–14, ECF. No. 158-5; *Id.* Ex. 6 at 1, ECF No. 158-6.  The District objects to these supplemented additional costs.  *See* Def.'s Sur-Reply at 14.  And this district's local rules

---

[14] The Court will reduce the bill of costs by $242.65 for these costs.

provide that "[a]ny cost omitted from the bill of costs shall not be allowed, except for post-judgment costs." D.D.C. Local Civ. R. 54.1(a). Without an explanation or any request to amend, the Court will not allow Ms. Craig to recover for these omitted costs. *See Laffey v. Nw. Airlines, Inc.*, 587 F.2d 1223, 1223–24 (D.C. Cir. 1978) (denying motion for leave to file, out of time, bill of costs when moving party did not show good cause).

### 3. Taxable Costs

Overall, the Court will direct the Clerk of the Court to tax Ms. Craig's Bill of Costs in the amount of $5,424.15. The award takes into account the adjustments noted above, *see supra* notes 11–14, and breaks out as follows:

| | |
|---|---|
| Fees of the Clerk: | $350.00 |
| Fees for service of summons and subpoena: | $1,140.00 |
| Fees for printed or electronically recorded transcripts: | $3,478.11 |
| Fees for witnesses: | $456.04 |

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Fees and Costs (ECF No. 149) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Bill of Costs (ECF No. 150) is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 15, 2016

RUDOLPH CONTRERAS
United States District Judge
